**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPICE JAZZ LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>YOUNGEVITY INTERNATIONAL, INC. *et al.*,<br><br>　　　　　　　　　　Defendant. | Case No. 19-cv-583-BAS-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**[ECF No. 13]** |

　　　　Plaintiff Spice Jazz LLC was once a successful multi-level marketing operation with profits in the millions of dollars. (First Amended Complaint, "FAC," ECF No. 10, ¶¶ 1, 3.) Plaintiff is now bankrupt, and in a nutshell, it alleges this downfall occurred as a result of the actions of Colleen Walters and Defendant Youngevity International, Inc. Plaintiff has filed a complaint against Youngevity as well as Plaintiff's former employee Bianca Reyne Djafar-Zade. Youngevity moved to dismiss the complaint. ("Mot.," ECF No. 13.) The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** the Motion.

– 1 –

## I. FACTUAL ALLEGATIONS

Plaintiff sold culinary recipes and spices to customers, using a multi-level marketing ("MLM") sales force composed of individual sales representatives. (FAC ¶ 1.) Sales force members were recruited, provided with marketing materials and strategies, entrusted with secret recipes, and encouraged to sell the products throughout Australia and the United States. (*Id.*) Plaintiff hired Colleen Walters to be its CEO, and Walters successfully recruited sales team members and ran the company's operation. (*Id.* ¶ 14.) But during her employment with Plaintiff, Walters worked with Defendant Youngevity, a direct competitor also running an MLM sales force. (*Id.* ¶ 24.) Walters "hatched a scheme" to steal Plaintiff's business and bring it to Youngevity, who offered her "a sweeter deal for her spices." (*Id.* ¶ 16.) Walters then left Plaintiff's company, taking with her all of Plaintiff's sales force and "a treasure trove of proprietary recipes and products." (*Id.* ¶ 17.) Youngevity allegedly "look[ed] the other way" when Walters brought over a wealth of valuable information, or maybe conspired with her in a plan to "sabotage Plaintiff's business operation." (*Id.* ¶¶ 26, 29.)

Although the complaint is filled with salty allegations against Walters, Walters is not named as a Defendant. Instead, Plaintiff brings claims against Youngevity and against Bianca Reyne Djafar-Zade. Ms. Djafar-Zade was an employee on Plaintiff's payroll but "never actually" did any work, by virtue of being Walters' daughter. (*Id.* ¶ 52.) Djafar-Zade is not a part of the pending motion.

## II. LEGAL STANDARDS

### A. <u>Rule 12(b)(7)</u>

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). A three-step analysis is used to determine if a party is required to be joined under Rule 19. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, a court must determine whether a nonparty is necessary under Rule 19(a). *Id.* This is a two-pronged inquiry. *White v. Univ. of*

*Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014) (citing *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991)). The court must initially determine "whether complete relief can be afforded if the action is limited to the existing parties." *Id.* (citations omitted). The court must next determine "whether the absent party has a legally protected interest in the subject of the action and, if so, whether the party's absence will impair or impede the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *Id.* (citation and internal quotation marks omitted). "If the answer to either of those questions is affirmative, then the party is necessary and 'must be joined.'" *Id.* (citing Fed. R. Civ. P. 19(a)(1)). The Rule 19(a) inquiry "is a practical one and fact specific." *Id.* (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

Second, a court must determine if it is feasible for the absentee party to be joined such that subject matter and personal jurisdiction exist and venue is proper. *Peabody*, 400 F.3d at 779 (citing Fed. R. Civ. P. 19(a)). Finally, if it is not feasible to join the absent party, a court must decide "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*; Fed. R. Civ. P. 19(b). An indispensable party is one which "not only [has] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* at 780 (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)); *see also* Fed. R. Civ. P. 19(b).

The factors to be considered by a court in its Rule 19(b) analysis include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be

adequate; and (4) whether the plaintiff would have an adequate remedy if the action was dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

**B. Rule 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. ANALYSIS

### A. <u>Failure to Join an Indispensable Party</u>

Defendant first moves to dismiss counts three and four for failure to join Walters. These counts for negligent and intentional interference with existing contractual relationships are based, in part, on Defendant's alleged interference with Walters' employment agreement. Plaintiff has already filed suit against Walters in Texas, and the case has been sent to arbitration. (Mot. 3.)[1]

The Court finds in this Order that there is no cause of action in California for negligent interference with existing contractual relations (third cause of action). *See infra* Section III.B.1. Therefore, the Court only analyzes whether Walters is a necessary party for the fourth cause of action (intentional interference with contracts).

#### 1. **Walters Is a Necessary Party**

The relevant question under Rule 19 is whether Walters has a legally protected interest in the subject of the action and, if so, whether her absence will impair or impede her ability to protect that interest or will leave Plaintiff or Defendant subject to multiple, inconsistent legal obligations with respect to that interest.

---

[1] Defendant requests the Court judicially notice certain documents that were filed in the Texas case. (ECF No. 13-3.) In analyzing a motion to dismiss under Rule 12(b)(7), the court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party. *Paiute-Shoshone Indians of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011). However, the court is not limited to the pleadings. *See* 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1359 (3d ed. 2018). "A court may consider extraneous evidence when deciding a Rule 12(b)(7) motion without converting it into a motion for summary judgment." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1197 (C.D. Cal. 2011) (citing *Ray v. Int'l Bank, Inc.*, No. 04-CV-2221-MSK-BNB, 2005 WL 2305017, at *4 (D. Colo. Sept. 21, 2005)).

The first documents in the request for judicial notice were filed in the Texas case and therefore are matters of public record. The Court takes judicial notice of the "authenticity and existence of" each record, "not the veracity or validity of its contents." *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D. Cal. 2013) (citing *Lee v. City of Los Angeles*, 250 F.3d. 668 (9th Cir. 2001)).

The Court does not judicially notice the final two documents in the request, which relate to Plaintiff's bankruptcy filings, because the Court did not consider them for purposes of this Order.

Defendant argues Walters has an interest in this action because Plaintiff is asking the Court to determine the validity of the employment agreement between Plaintiff and Walters. (Mot. 6.) The Court agrees. The elements for intentional interference with contracts are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). To rule for Plaintiff on this cause of action, the Court would need to analyze each element.

The Court cannot determine the validity of Walters' and Plaintiff's contract without Walters. It is a "fundamental principle" that "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150, 1157 (9th Cir. 2002). Plaintiff is not asking the Court to "decimate" the contract, nor is it directly moving for declaratory judgment as to the status of the contract. But Plaintiff is implicitly seeking a determination of the validity of Walters' contract, and this would affect Walters. *See Camacho v. Major League Baseball*, 297 F.R.D. 457, 462 (S.D. Cal. 2013) (holding a determination of the validity of a contract may impair and impede a party's legally protected interest when they are a party to the contract). Therefore, Walters has a legally protected interest in this action.[2] Her absence would impair her ability to protect this interest.

The Court also finds that Walters' absence could leave Plaintiff with multiple inconsistent obligations. For example, if this Court determined Plaintiff and Walters' employment contract was enforceable, and the arbitrator held otherwise, this would

---

[2] Further, as an alternate request in its Complaint, Plaintiff alleges the Court could reform the employment contract if the contract is invalid. (FAC ¶ 69.) Plaintiff frequently mentions this request in its opposition, making it clear that it believes the Court could simply reform the contract if it deems necessary. ("Opp'n," ECF No. 17, at 17, 19.) The Court could not reform a contract without a party to that contract being before the Court.

– 6 –

leave Plaintiff with an inconsistent understanding of its obligations under the contract. And if Plaintiff declined to enforce the contract due to one decision, this would be violating the other decision in which it was determined the contract was valid. *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").

Therefore, Walters is a necessary party.

### 2. Walters Cannot Be Joined

"If an absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Equal Emp. Opportunity Comm'n v. Peabody W. Coal Co.,* 400 F.3d 774, 779 (9th Cir. 2005). Rule 19(a) sets forth three circumstances in which joinder is not feasible: (1) when venue is improper; (2) when the absentee is not subject to personal jurisdiction; and (3) when joinder would destroy subject matter jurisdiction. *See id.* (citing Fed. R. Civ. P. 19(a)). Defendant points out that Walters cannot be joined because all claims arising from her employment relationship with Spice Jazz are subject to binding arbitration in Texas. (Mot. at 7.) Plaintiff does not address the issue of feasibility of joinder in its opposition brief. The Court agrees that Walters cannot be joined in this matter because any "disputes . . . relating to the meaning, interpretation, enforcement or application" of Walters' and Plaintiff's Employment Agreement must be resolved in arbitration. ("Employment Agreement," Exhibit A to Exhibit 3 to Request for Judicial Notice, ECF No. 13-4, at ¶ 8.) A determination of the validity of the Employment Agreement is an issue that must be arbitrated. *See Meyer v. Kalanick*, 291 F. Supp. 2d 526, 535 (S.D.N.Y. 2018) (holding absent party Uber could not be joined because any dispute involving Uber was subject to mandatory arbitration); *LST Fin., Inc. v. Four Oaks Fincorp, Inc.*, No. 14 Civ. 435, 2014 WL 3672982, at *4 (W.D. Tex. July 24, 2014) (dismissing an action where

"mandatory arbitration provisions" made joinder of necessary parties "unfeasible"). And Plaintiff and Walters have already agreed to resolve the issue in arbitration. Because Walters is a necessary party and she cannot be joined, the Court must determine whether Walters is an "indispensable" party such that certain claims must be dismissed in this case.

### 3. Walters Is Not Indispensable

Under Rule 19(b), indispensable parties are "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1854). Rule 19(b) provides the factors that courts should consider in determining if an action should be dismissed because an absent party is indispensable: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. Fed. R. Civ. P. 19(b).

The Court finds that the fourth cause of action could be reformed to not refer to Walters' contract at all, and instead focus on the contracts between Plaintiff and its sales force team. (*See* FAC ¶ 85 (alleging Defendant interfered with Plaintiffs' contracts with its sales-force members and its CEO).) Therefore, an adequate remedy (though it would be incomplete) can be awarded to Plaintiff without Walters' presence, if the Court focuses only on the alleged interference with the sales force team's contracts. Of course, this would change the cause of action, which is mostly centered on Walters' and Defendant's conduct. But the issues between Plaintiff and Walters are already being litigated in arbitration. Therefore, Plaintiff will not be prejudiced if the Court declines to consider any alleged interference with Walters' contract.

Defendant argues it will be prejudiced if Walters is not a part of this lawsuit

because it may not be able to obtain discovery from her. (Mot. at 8.) First, such a claim is speculative, as Defendant has no basis for arguing that Walters "may not be available or willing to provide discovery." (*Id.*) And second, "Rule 19 does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999) (internal quotation and alteration omitted).

After considering the Rule 19(b) factors, the Court finds they weigh in favor of finding Walters is not indispensable because the one contested cause of action can be shaped around her, and no party will be prejudiced if she is not joined. The Court declines to dismiss this cause of action for this reason.

### B. Failure to State a Claim

Defendant moves to dismiss counts three, five, seven, nine, and twelve "because they are not legally cognizable causes of action." (Mot. at 9.)

#### 1. Third Cause of Action: Negligent Interference with Existing Contractual Relations

As noted above, Plaintiff alleges Defendant interfered with the contracts between Plaintiff, Walters, and Plaintiff's sales force team. Plaintiff alleges Defendant interfered both negligently and intentionally.

Defendant argues a claim for negligent interference with existing contractual relations is not cognizable under California law. (Mot. at 10.) Defendant relies on *Fifield Manor v. Finston*, 54 Cal. 2d 632, 637 (1960), where the California Supreme Court noted that courts have generally refused to recognize a cause of action based on negligent, as opposed to intentional, conduct that interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome, because to do so "would constitute an unwarranted extension of liability for negligence." Another district court analyzed *Fifield* along with other state court decisions and determined, "California Courts of Appeal are divided on whether a

– 9 –

claim for negligent interference with contract lies, [but] the Supreme Court's ruling in *Fifield* has not been overruled." *Starlite Dev. (China) Ltd. v. Textron Fin. Corp.*, No. CV-F-07-1767 OWW/DLB, 2008 WL 2705395, at *23 (E.D. Cal. July 8, 2008). And various federal courts have dismissed claims of negligent interference with contract, finding that California does not recognize such claims. *Id.*; *see also ErgoCare, Inc. v. D.T. Davis Enters., Ltd.*, No. CV1202106DMGSPX, 2012 WL 13012733, at *5 (C.D. Cal. Nov. 20, 2012) (citing *Davis v. Nadrich*, 174 Cal. App. 4th 1, 9 (2009)); *Folex Golf Indus., Inc. v. China Shipbuilding Indus. Corp.*, No. CV 09-2248-R, 2010 WL 4924014, at *8 (C.D. Cal. Dec. 2, 2010) ("[Plaintiff's] eighth cause of action for negligent interference with contractual relations does not exist under California law . . . ."), *rev'd on other grounds*, 479 F. App'x. 61 (9th Cir. June 12, 2012).[3]

This Court agrees that there is no indication *Fifield* has been overruled, and the Court will not analyze a claim not recognized in California. The Court **DISMISSES WITH PREJUDICE** Plaintiff's third claim.

### 2. Fifth Cause of Action: Negligent Interference with Existing and Prospective Economic Advantage

Defendant moves to dismiss this claim because "Youngevity was and is a competitor of Spice Jazz and thus owes Spice Jazz no duty of care" and therefore there is no claim of negligence. (Mot. at 10.) Plaintiff's only argument in response is that negligent interference with prospective economic advantage is a claim recognized under California law. (Opp'n at 22.) But no one has argued otherwise.

Plaintiff admits that it and Defendant are competitors. (FAC ¶ 16.) And competitors owe each other no duty of care. *Stolz v. Wong. Comm.*, 25 Cal. App. 4th

---

[3] Other courts have analyzed claims of negligent interference without recognizing *Fifield* or discussing whether the claim exists under California law. *See UGM Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1118 (C.D. Cal. 2015); *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 350 (2005).

1811, 1825 (1994). Without any duty, there can be no negligence claim. Many courts have found the same, and thus dismissed negligent interference with economic advantage claims brought against competitors. *See Sierra Nat. Ins. Holdings, Inc. v. Altus Fin., S.A.*, No. CV 01-01339 AHM(CWX), 2001 WL 1343855, at *17 (C.D. Cal. June 20, 2001); *Cal. Expanded Metal Prod. Co. v. ClarkWestern Dietrich Bldg. Sys. LLC*, No. CV 12-10791 DDP MRWX, 2014 WL 5475214, at *3 (C.D. Cal. Oct. 29, 2014) (dismissing the claim because "the parties are competitors whose businesses are not interrelated in any way").

Plaintiff has not pled Defendant owed it any duty, so the negligence claim is not sufficiently pled. The Court **DISMISSES WITHOUT PREJUDICE** the fifth claim.

### 3. Seventh and Ninth Causes of Action: Negligent Misappropriation of Trade Secrets

These two causes of action allege the same thing, but one is brought under California's Uniform Trade Secrets Act ("CUTSA") and the other under the Federal Defense of Trade Secrets Act ("DTSA"). Defendant argues there is no cause of action for <u>negligent</u> misappropriation of trade secrets, only intentional misappropriation. In response, Plaintiff points to the definition of "misappropriation" under both statutes—defined as the acquisition or disclosure of a trade secret by a person who knows "or has reason to know" the trade secret was acquired by improper means. Cal. Civ. Code § 3426.1(b)(1); 18 U.S.C. § 1839(5). Thus, Plaintiff argues trade secrets can be acquired negligently.

Even acknowledging such language, courts have found that "misappropriation of trade secrets is an intentional tort." *Cypress Semiconductor Corp. v. Superior Court*, 163 Cal. App. 4th 575, 585 (2008) (citing Cal. Civ. Code § 3426.1). Plaintiff fails to cite a single case where a court analyzed a claim of negligent misappropriation of trade secrets, and the one cased Plaintiff cited in fact does not discuss negligence at all. (Opp'n at 14.) Therefore, the claim of negligent

– 11 –

1 misappropriation of trade secrets does not appear to exist, and Plaintiff has not convinced the Court otherwise.

The Court **DISMISSES WITHOUT PREJUDICE** the seventh and ninth causes of action, with leave to amend to the extent Plaintiff can amend the claims to allege something other than negligent misappropriation.

### 4. Twelfth Cause of Action: Restitution

Defendant moves to dismiss this cause of action, arguing restitution is not a cause of action but is instead a remedy. (Mot. at 11.) Indeed, "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But a restitution theory is not irrelevant, as it describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* If a plaintiff alleges unjust enrichment, a court may construe the claim "as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)).

The Court can construe Plaintiff's restitution claim as a quasi-contract claim seeking restitution. Yet even so, Plaintiff has not alleged any facts to show a quasi-contractual relationship exists. The Court **DISMISSES WITHOUT PREJUDICE** the restitution claim.

### C. <u>Failure to Plead Sufficient Facts</u>

Defendant moves to dismiss counts four, five, six, eight, ten, and eleven because Plaintiff has failed to plead sufficient facts to support the claims. (Mot. at 12.)

### 1. Fourth Cause of Action: Intentional Interference with Contracts

For this cause of action, Plaintiff must allege: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

– 12 –

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pac. Gas & Elec.*, 50 Cal. 3d at 1126 (1990).

Here, Defendant argues that Plaintiff has not established it has a "valid" contract with its sales force team or with Walters. The Court disagrees and finds at this stage, what Plaintiff has pled is sufficient. Plaintiff pled it has a valid contract with it and "all of the members of its marketing sales force." (FAC ¶ 86.) Defendant argues that the contract with Walters is not valid because the non-compete clause in the contract is invalid. (Mot. at 13.) Such an argument goes beyond what the Court considers at this stage, and the Court declines to look past Plaintiff's supported assertion of a valid contract and delve into the details of non-compete clauses under Texas law. (*Id.* at 14.) Instead, the Court accepts as true Plaintiff's allegation that it has valid contracts, Defendant knew of the contracts, yet intentionally induced contract breaches by enticing Plaintiff's CEO and sales force team members over to its company. Therefore, Plaintiff has sufficiently pled this cause of action and the Court declines to dismiss it.

### 2. Fifth Cause of Action: Negligent Interference with Prospective Economic Relationships

The Court already dismissed this claim because it does not exist under California law.

### 3. Sixth Cause of Action: Intentional Interference with Prospective Economic Relationships

Plaintiff alleges Defendant intentionally interfered with Plaintiff's economic relations by interfering with Plaintiff's contracts with its sales-force members and its CEO, and aided and abetted Walters' breaches of her fiduciary duties. (FAC ¶ 85.)

To plead a claim for intentional interference with prospective business advantage, a plaintiff must allege: "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3)

intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305 (C.D. Cal. 1996) (citing *Eichman v. Fotomat Corp.*, 871 F.2d 784, 800 (9th Cir. 1989)).

Defendant points out that "courts require an additional element [for this tort], that the alleged interference must have been wrongful by some measure beyond the fact of the interference itself." *Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 (2014); *see also Codexis, Inc. v. Enzymeworks, Inc.*, No. 16-cv-826-WHO, 2016 WL 4241909, at *6 (N.D. Cal. Aug. 11, 2016) (noting that the wrongful independent act requirement is what distinguishes this tort from the tort of interference with contractual relations). The act must be "independently wrongful," i.e., "unlawful, that is, . . . it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

Defendant admits that the wrongfulness of the alleged interference can be accomplished through aiding and abetting others to breach their fiduciary duties. (Mot. at 18.) Plaintiff pleads that Defendant's act of recruiting Walters and the sales force interfered with Plaintiff's economic advantage, and that this act was independently wrongful because Defendant assisted Walters in breaching her fiduciary duties to Plaintiff. Because the Court finds Plaintiff's aiding and abetting claim may proceed, *see* Section III.C.5, *infra*, the cause of action based on that claim may also proceed. The Court **DENIES** the Motion to Dismiss this cause of action.

### 4. Eighth and Tenth Causes of Action: Intentional Misappropriation of Trade Secrets (Federal and State Law)

Defendant moves to dismiss both trade secret misappropriation causes of action. (Mot. at 19.)

Both CUTSA and DTSA require a plaintiff to show that it possessed a trade secret, that the defendant misappropriated the trade secret, and that the defendant's

conduct damaged the plaintiff. *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845 (N.D. Cal. 2019) (citations omitted).

Plaintiff designates its trade secrets as "(1) proprietary spice blends and recipes; (2) proprietary marketing techniques and materials; and (3) a proprietary database of customer names and contact information." (FAC ¶ 19.) Defendant first argues that these are not sufficiently alleged to be trade secrets.

### a. Whether Plaintiff Owns Trade Secrets

Defendant first argues Plaintiff's alleged trade secrets are insufficient because Plaintiff does not describe the trade secrets in enough detail. (Mot. at 20.) A plaintiff need not "spell out the details of the trade secret," *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015), but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

Dividing up the three alleged trade secrets, the Court first addresses the trade secret defined as Plaintiff's "spice blends and recipes." There are no further details describing this alleged trade secret. Although the Court does not expect Plaintiff to meticulously describe each recipe, Plaintiff must provide more detail to sufficiently describe the subject matter so that Defendant may determine "the boundaries" of the trade secret. *Id.*[4] The Court **DISMISSES WITHOUT PREJUDICE** all allegations

---

[4] Defendant, with no supporting authority, also argues that the recipes cannot be trade secrets because they were known by members of Plaintiff's sales force team. (Mot. at 20.) A "trade secret" is information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). First, the sales force team is composed of independent contractors who work for Plaintiff. They would not obtain economic value from the recipes'

– 15 –

of trade secret misappropriation based on "spice blends and recipes."

The second category of "marketing techniques and materials" is specifically alleged to be sales techniques and "specific training for sponsoring, host coaching, selling products, trade shows and markets, and fundraising." (FAC ¶ 22.) "The techniques were complemented by proprietary marketing materials such as brochures, catalogues and PowerPoints that Plaintiff developed." (*Id.*) The Court finds this sufficiently describes the subject matter to separate it from general knowledge.

The third category of alleged trade secrets is Plaintiff's customer list. Defendant argues customer lists cannot be trade secrets. (Mot. at 19.) Customer lists are not protectable if they are "readily ascertainable" through public sources, such as business directories. *Am. Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal. App. 3d 1318, 1326 (1986). But lists can be protectable "where the employer has expended time and effort identifying customers with particular needs or characteristics." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997). The list must provide a business with a "substantial business advantage." *Klamath–Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 465 (1978).

Here, Plaintiff provides no information as to why its customer list is proprietary or provides it with any advantage. All Plaintiff alleges is it owns a database of "customer names and contact information." Such a broad assertion with no support is not enough to classify the list as a trade secret. The Court **DISMISSES WITHOUT PREJUDICE** all allegations of trade secret misappropriation based on a customer list.

---

disclosure, in fact, they would make more money if they are able to keep the recipes a secret from competition. And second, the information was subject to reasonable efforts to maintain its secrecy because it was stored on a password-protected spreadsheet that only roughly 4–5 of Plaintiff's key employees could access. (FAC ¶ 20.) Therefore, sharing the information with a few members of Plaintiff's team does not mean the information is not a trade secret.

### b. Whether Plaintiff Has Pled Misappropriation

Under CUTSA, misappropriation means either (1) acquisition of a trade secret through improper means or (2) disclosure or use of a trade secret by improper means. 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). Defendant argues Plaintiff does not allege Defendant acquired, disclosed, or used the trade secrets through improper means. (Mot. at 21.) "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Cal. Civ. Code § 3426.1(a). Of course, if Defendant had merely received trade secret information without doing anything to facilitate receipt of the secrets, it would not be liable for misappropriation. *See Pellerin*, 877 F. Supp. 2d at 989 (holding mere possession of trade secrets is not enough). But the allegation is not that the trade secrets merely wafted Defendant's way. The allegation is that Defendant acquired the trade secrets by encouraging Walters to breach her fiduciary duty (i.e. a duty to maintain secrecy) to Plaintiff, her employer. Plaintiff has sufficiently pled misappropriation.

The Court dismisses allegations of trade secret misappropriation based on a "spice blends and recipes" and on a customer list, but does not dismiss the remainder of the eighth and tenth causes of action.

### 5. Eleventh Cause of Action: Aiding and Abetting Breach of Fiduciary Duty

A claim for aiding and abetting breach of fiduciary duty requires: "(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014). "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Ass'n*,

127 Cal. App. 4th 1138, 1145 (2005); *In re First Alliance Mort. Co.*, 471 F.3d 977, 933 (9th Cir. 2006) ("[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing.").

Plaintiff alleges Walters breached her fiduciary duties to Plaintiff by sharing Plaintiff's trade secrets and recruiting its marketing sales-force members. (FAC ¶ 158.) Plaintiff alleges Defendant knew of Walters' breaches of her fiduciary duties and intended to further those breaches and assisted those breaches. (*Id.* ¶ 159.) Although this is a conclusory allegation, the Court finds Plaintiff has adequately supported it with allegations of actual knowledge. Although pled in the alternative, Plaintiff pleads that Defendant conspired with Walters and "specifically discussed and agreed to a plan to sabotage Plaintiff's business operation and steal all of its key employees, sales force members and trade secrets and transfer them to Youngevity." (*Id.* ¶ 29.) Plaintiff alleges Defendant knew that Walters brought over a spreadsheet of proprietary spice blends and recipes, as well as the names and contact information of many sales representatives. (*Id.* ¶ 20, 23.) Defendant also knew that Walters was Plaintiff's CEO at the time she transferred companies, bringing with her proprietary information. As Plaintiff alleges, Defendant was receiving a sweet deal in hiring Walters who was in possession of spreadsheets filled with information, and therefore Defendant allegedly had knowledge that Walters was violating her CEO duties in bringing it the information. Plaintiff sufficiently alleges Youngevity had actual knowledge that Walters was breaching her fiduciary duties to Plaintiff as its CEO. *See Namer v. Bank of Am., N.A.*, No. 16cv3024 JM(WVG), 2017 WL 2937098, at *6 (S.D. Cal. July 10, 2017) (holding actual knowledge need not be plead with particularity). The claim of aiding and abetting is sufficiently pled. The Court **DENIES** the Motion to Dismiss this cause of action.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's Motion

– 18 –

as follows:  The Court dismisses the following claims: negligent interference with existing contractual relations (third claim), negligent interference with existing and prospective economic advantage (fifth claim), negligent misappropriation of trade secrets (seventh and ninth claims), restitution (twelfth claim), and portions of the intentional misappropriation cause of action (eighth and tenth claims).

The Court grants Plaintiff leave to file an amended complaint so it may cure the deficiencies noted herein.  Plaintiff may file an amended complaint **on or before October 18, 2019.**  If Plaintiff fails to file an amended complaint at this time, the case will proceed on only the causes of action not dismissed in this Order.

Further, Plaintiff has not yet served Defendant Djafar-Zade.  The Court reminds Plaintiff it must serve all named Defendants with its first amended complaint.  *See* Fed. R. Civ. P 4(m).

**IT IS SO ORDERED.**

**DATED: September 19, 2019**

Hon. Cynthia Bashant
United States District Judge