**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
California Bar No. 275089
Michał Zapendowski, Esq.
Texas Bar No. 24075328
*Admitted Pro Hac Vice*
J.P. Morgan Chase Tower
2200 Ross Ave, Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
E: mas@sbaitilaw.com; jmz@sbaitilaw.com

**Attorneys for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPICE JAZZ LLC, | § Case No. 3:19-cv-00583-BAS-WVG |
| | § |
| Plaintiff, | § **PLAINTIFF'S MEMORANDUM** |
| | § **IN OPPOSITION TO DEFENDANT** |
| vs. | § **YOUNGEVITY INTERNATIONAL,** |
| | § **INC.'S MOTION TO DISMISS** |
| | § **THE SECOND AMENDED** |
| | § **COMPLAINT** |
| YOUNGEVITY | § |
| INTERNATIONAL, INC., | § |
| BIANCA REYNE DJAFAR-ZADE | § Hearing Date: December 2, 2019 |
| and JOHN DOES 1-10, | § Courtroom: 4B |
| | § Judge: Hon. Cynthia Bashant |
| Defendants. | § |
| | § |
| | § |

Plaintiff Spice Jazz LLC submits this memorandum in opposition to Defendant Youngevity International, Inc.'s motion to dismiss, and would respectfully show the Court:

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...............................................................1

II. FACTUAL BACKGROUND ...............................................................2

III. ARGUMENT ...............................................................................4

    A. The Court Should Reject Youngevity's Motion for Reconsideration
       of the Court's Previous Ruling That Plaintiff Has Sufficiently
       Pleaded a Claim for Tortious Interference with Prospective
       Economic Advantage (Count Four) ..............................................4

        1. Defendant Is Not Forthcoming About the Fact That
           It Is Seeking Reconsideration of a Previous Ruling ................4

        2. Defendant Does Not Meet the Stringent Standard for a
           Motion for Reconsideration .................................................5

        3. The Court's Previous Ruling Correctly Found That
           Plaintiff's Claim Was Sufficiently Pleaded ..........................6

    B. Plaintiff Has Sufficiently Pleaded Misappropriation of Its
       Recipes, And Should be Allowed to Use the Process of
       Discovery to Compile A Comprehensive List of Youngevity
       Products Based On Stolen Recipes ...............................................8

    C. The Allegations in the Complaint Sufficiently State A
       Basis for Restitution Under *Durell* ...........................................13

    D. If the Court Determines That There Are Defects in the
       Second Amended Complaint, It Should Grant Leave to Amend
       Again So That Plaintiff's Claims Can Be Judged on Their
       Factual Merits ...........................................................................15

IV. CONCLUSION ...........................................................................15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*205 Corp. v. Brandow*
    517 N.W.2d 548 (Supreme Court of Iowa 1994) ...............................11

*389 Orange St. Partners v. Arnold*,
    179 F.3d 656 (9th Cir. 1999) .............................................................5

*Advanced Modular Sputtering, Inc. v. Superior Court*,
    132 Cal. App. 4th 826, 33 Cal. Rptr. 3d 901 (Cal. App. 2005)...........12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, (2007) ...................13

*Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*
    No. 11-cv-565, 2011 WL 5360074 (S.D. Cal. Nov. 3, 2011) ..............6

*Brown v. United States*, No. CV 09-8168 ABC,
    2011 U.S. Dist. LEXIS 9215 (C.D. Cal. 2011) ..............................5-6

*Damabeh v. 7-Eleven, Inc.*
    No. 5:12-cv-1739, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ..........6

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th1350, 108 Cal. Rptr. 3d 682 (Ct. App. 2010) ..........13-15

*Forman v. Davis*,
    371 U.S. 178, 83 S. Ct. 227 (1962) ..................................................15

*Morlife, Inc. v. Perry*
    56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (Cal. App. 1997)...........13

*Ghk Assocs. v. Mayer Grp.*,
    224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (Cal. App. 1990)................8

*KatiRoll Co. v. Kati Junction, Inc.*, No. 14-cv-1750 (SAS),
    2015 U.S. Dist. LEXIS 129424 (S.D.N.Y. Sep. 25, 2015) ................11

*Kenner v. Kelly*, 2012 WL 553943 (S.D. Cal. Feb. 21, 2012) ...........................4, 7

*Maskoud v. Guelton*, No. 3:17-cv-362,
  2017 WL 2505887 (S.D. Cal. June 9, 2017) ...................................................6

*Motorola, Inc. v. Lemko Corp.*,
  609 F. Supp. 2d 760, (N.D. Ill. 2009) ........................................................12

*Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SA CV 17-0158-DOC (JCGx)
  2017 WL 8220703, 2017 U.S. Dist. LEXIS 219769 (C.D. Cal. 2017) ...........11

*Nestle USA, Inc. v. Crest Foods, Inc.*,
  2017 WL 3267665 (C.D. Cal. July 28, 2017) ............................................4, 7

*In re Providian Credit Card Cases*
  96 Cal. App. 4th 292, 116 Cal. Rptr. 2d 833 (Cal. App. 2002) ................. 13-14

*Sargon Enters., Inc. v. Univ. of S. Cal.*
  55 Cal. 4th 747, 149 Cal. Rptr. 3d 614, 288 P.3d 1237 (Cal. 2012) ...................8

*Sch. Dist. No. 1J v. ACandS, Inc.*
  5 F.3d. 1255 (9th Cir. 1993) .......................................................................5

*SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR,
  2012 U.S. Dist. LEXIS 82767 (N.D. Cal. 2012) .........................................12

*UMG Recordings v. Global Eagle Entertainment*
  117 F. Supp.3d 1092 (C.D. Cal. 2015) .........................................................6

*United States v. Westlands Water Dist.*,
  134 F. Supp. 2d 1111 (E.D. Cal. 2013) ........................................................5

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.*
  17-cv-2574, 2017 WL 7201873 (S.D. Cal. Aug. 30, 2017) .............................6

**Rules**

Fed. R. Civ. P. 15 .....................................................................................15

# I.

## PRELIMINARY STATEMENT

Plaintiff Spice Jazz LLC ("Spice Jazz") owned trade-secret recipes and spice blends which it offered to customers in Australia, New Zealand, the United States and elsewhere, until its business was sabotaged and destroyed in 2017 by a conspiracy between its ex-CEO, Colleen Walters, and Youngevity, its direct competitor.

In 2017, Defendant Youngevity International, Inc. ("Youngevity") effectively stole Plaintiff's entire business by successfully conspiring with Plaintiff's then CEO—while she was still ostensibly working for Plaintiff—to organize a desertion *en masse* of Plaintiff's key employees and sales representatives to Youngevity, bringing a treasure trove of confidential recipes and spice blends to Youngevity in the process. Shortly afterwards, Youngevity suddenly came out with a new product line called "*Saveur*," which consisted of spice blends and recipes that would have taken months, if not years, for Youngevity to develop on its own, and that were suspiciously similar to those that had been marketed earlier on behalf of Spice Jazz.

Within a few months of this mass desertion and accompanying theft of trade secrets, Plaintiff's business went from millions of dollars in annual revenues to liquidation and bankruptcy.

Having substantially failed to obtain dismissal of Spice Jazz's claims through its previous motions to dismiss,[1] Youngevity now moves to dismiss again—directly rehashing arguments the Court has already rejected. The Court should stand by its initial reasoning and allow Spice Jazz's claims to move forward to discovery and a trial.

---

[1] Youngevity's most recent motion to dismiss, ECF No. 13, sought the dismissal of all twelve counts in the First Amended Complaint. The Court only dismissed one of the counts with prejudice, *see* ECF No. 19, *Order Granting In Part And Denying In Part Motion to Dismiss* at 10:13-15. Spice Jazz carefully amended its pleading taking into account the guidance offered by the Court, and Youngevity has abandoned the majority of its attempt to seek dismissal.

## II.

## <u>FACTUAL BACKGROUND</u>

As explained above, the gravamen of Plaintiff's complaint against Youngevity is that it actively conspired with Plaintiff's CEO, while she was still employed by Plaintiff, to steal all of Plaintiff's key employees and sales force members and most of Plaintiff's trade secrets.

The allegations against Youngevity include the following:

- Youngevity's officers and directors conspired with Ms. Walters and specifically discussed and agreed a plan to sabotage Plaintiff's business operation and steal all of its key employees, sales force members and trade secrets and transfer them to Youngevity. Second Amended Complaint ("SAC") ¶ 71.

- As will be revealed in greater detail by discovery, Ms. Walters and individuals at Youngevity, including (upon information and belief) Youngevity officers and directors, discussed and agreed to a plan through which Ms. Walters would orchestrate the theft of Plaintiff's entire business by moving all of Plaintiff's key sales people and employees and all of Plaintiff's trade secrets from Plaintiff to Youngevity, its direct competitor. Youngevity reached this agreement with Ms. Walters while she was still working as Plaintiff's CEO, and the conspiracy was carefully planned and carried out over many months while Ms. Walters continued collecting her salary from Plaintiff. *Id.* ¶¶ 72-73.

- With Defendants' full knowledge and agreement, Ms. Walters was able to convince Plaintiff's key salespeople to move with her to Youngevity, and bring with them roughly 50-100 key employees and members of the sales force, thereby successfully transferring all or substantially all <u>key</u> members of Plaintiff's sales force to Youngevity. *Id.* ¶ 74.

- Ms. Walters orchestrated this scheme, which took several months to properly plan and carry out, while still employed by Plaintiff as Plaintiff's CEO. *Id.* ¶ 75.

- Ms. Walters and the key employees who moved also took with them the proprietary recipes that they had access to and in her possession as CEO, transferring these materials directly to her new employer. *Id.* ¶ 76.

- Ms. Walters' stab in the back was so successful that it decimated Plaintiff's entire business operation. As a result, Plaintiff's revenues, which had risen to seven figures and were projected to continue growing, collapsed within one quarter. *Id.* ¶ 77.

- Youngevity and its Officers and Directors hired *en masse* not only their competitor's CEO but key members of their competitor's sales force and allowed all of these employees and sales force members to bring proprietary recipes and trade secrets with them. *Id.* ¶ 78.

- Through this whole process, Youngevity and its Officers and Directors intentionally interfered with Plaintiff's contracts with its sales force members and intentionally misappropriated Plaintiff's trade secrets, by inducing Ms. Walters to move to Youngevity and to organize the transfer of roughly 50-100 key members of Plaintiff's sales force and the transfer of all of Plaintiff's proprietary recipes. *Id.* ¶ 83.

### III.

### ARGUMENT

**A. The Court Should Reject Youngevity's Motion for Reconsideration of the Court's Previous Ruling That Plaintiff Has Sufficiently Pleaded a Claim for Tortious Interference with Prospective Economic Advantage (Count Four)**

> **1. Defendant Is Not Forthcoming About the Fact That It Is Seeking Reconsideration of a Previous Ruling**

In raising (yet again) its argument that Plaintiff's claim for tortious interference with prospective economic advantage is insufficient, Defendant fails to notify the Court that it has previously raised this argument and that the Court has rejected it.

Defendant argued in support of its most recent motion to dismiss that Spice Jazz "Has Not Identified a Single Prospective Economic Relationship and, So, [its claim for tortious interference with prospective economic advantage] Must Be Dismissed," just as it does again now. *See* ECF No. 18, at 3:9-10:24. *See also* Youngevity's first motion to dismiss, ECF No. 9-1, at 21:12-22:1 (raising the same argument before).

Youngevity's arguments were based originally on two cases, *Kenner v. Kelly*, 2012 WL 553943, 2012 U.S. Dist. LEXIS 21456, at *13 (S.D. Cal. Feb. 21, 2012) and *Nestle USA, Inc. v. Crest Foods, Inc.*, 2017 WL 3267665, 2017 U.S. Dist. LEXIS 136557, at *42 (C.D. Cal. July 28, 2017). *See id.* In its response in opposition to the first time Youngevity raised this argument, Spice Jazz pointed out that Youngevity's demand for more specificity than what Plaintiff has provided under this claim misstates the law. Plaintiff is not required to list the names of all individuals who would have been successfully recruited into its sales force but-for Youngevity's actions. *See* ECF No. 17, at 21:7-22:17.

Youngevity reprised this argument most recently in its reply in support of its second motion to dismiss, arguing that the Court should dismiss this claim because

Plaintiff had not identified "specific" future economic relationships that had been sabotaged. *See* ECF No. 18, at 3:9-10:24. The Court rejected Defendants' argument, ruling that: "The Court **DENIES** the Motion to Dismiss this cause of action." ECF No. 19, at 14:22.

Accordingly, if Youngevity wants the Court to change its ruling on this issue, it should begin by being forthcoming about the fact that it is seeking reconsideration of an issue it has already raised before.

### 2. Defendant Does Not Meet the Stringent Standard for a Motion for Reconsideration

Perhaps Defendant avoided mentioning the fact that it is seeking reconsideration because it knows that "[m]otions for reconsideration are disfavored and rarely granted." *Brown v. United States*, No. CV 09-8168 ABC, 2011 U.S. Dist. LEXIS 9215, at *5 (C.D. Cal. 2011). There seems to be uniform consensus that: "A motion for reconsideration is not a vehicle to reargue the [original] motion." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

The Ninth Circuit has stated that: "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). It has also noted that: "There may also be other, highly unusual, circumstances warranting reconsideration." *Id. See also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). These standards, which originally arose under Rule 59(e), have since been held to be relevant to addressing motions for reconsideration in general—no doubt in order to discourage such motions. *See*

*Brown*, 2011 U.S. Dist. LEXIS 9215, at *5 (citing *389 Orange St.*, 179 F.3d at 665).

As explained above, what Defendant filed in Section IV-A of its third motion to dismiss, ECF No. 21-1, at 2:25-5:20, is clearly a motion for reconsideration of a portion of the Court's previous ruling. Indeed, Youngevity's current briefing, ECF No. 21-1, at 2:25-5:20, even relies on the *exact same cases* as its previous briefing, ECF No. 18, at 3:9-10:24 (both citing *UMG Recordings v. Global Eagle Entertainment*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015), *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, 17-cv-2574, 2017 WL 7201873, at *11 (S.D. Cal. Aug. 30, 2017), *Maskoud v. Guelton*, No. 3:17-cv-362, 2017 WL 2505887, at *7–8 (S.D. Cal. June 9, 2017); *Damabeh v. 7-Eleven, Inc.*, No. 5:12-cv-1739, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) and *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, No. 11-cv-565, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011)).

Defendant does not claim to present the Court with newly discovered evidence (which is, in any event, not really relevant to a motion to dismiss under Rule 12(b)(6)), nor with a change in controlling law, nor anything else that might meet the "stringent" standards imposed before a motion for reconsideration will be considered. *Brown*, 2011 U.S. Dist. LEXIS 9215, at *5. The Court should deny this covert attempt to get a second bite at the apple, and do so on this basis alone, lest it encourage future such attempts.

### 3. The Court's Previous Ruling Correctly Found That Plaintiff's Claim Was Sufficiently Pleaded

However, even if the Court were inclined to revisit its previous decision, and to do so without applying the stringent bar imposed on motions for reconsideration, it should still affirm its previous ruling.

The cases cited by Defendant demonstrate merely that truly vague allegations are insufficient to maintain a claim for tortious interference with future economic advantage, rather than detailed allegations such as those in this Complaint. In

*Kenner v. Kelly*, the Complaint merely "allege[d] that 'Kenner runs a business off the Kenner Horse Ranch,'" and the Court unsurprisingly held that "this creates only the possibility that existing or prospective economic relationships existed at the time of foreclosure. Such vague allegations are insufficient . . ." *Kenner v. Kelly*, 2012 WL 553943, 2012 U.S. Dist. LEXIS 21456, at *13 (S.D. Cal. Feb. 21, 2012).

Similarly, *Nestle USA, Inc. v. Crest Foods, Inc.* stands for the proposition that "[m]erely referring to customers in general is not sufficient to show a specific prospective business relationship." 2017 WL 3267665, 2017 U.S. Dist. LEXIS 136557, at *42 (C.D. Cal. July 28, 2017).

By contrast, here, the Complaint details the nature of Plaintiff's business operations (with existing sales reps continuously recruiting new ones), and alleges with much more specificity that: "Plaintiff was a growing business, with a growing marketing sales force, whose very essence was incentivizing sales force members to recruit new sales force members. Accordingly, Plaintiff had a reasonable likelihood—indeed a certainty—of entering into profitable economic relationships with additional sales force members as its business continued to grow." SAC ¶ 122.

Indeed, Plaintiff added additional detail by explaining that existing sales force members were incentivized to recruit new members by being permitted to collect a percentage of their recruits' sales. FAC ¶ 14; SAC ¶¶ 18, 23. Plaintiff explained that testifying experts in this proceeding will be able to look at Spice Jazz's existing records of growth in its sales force, and resulting sales, and extrapolate those records, based on real-world examples of other direct-marketing operations, to establish with a reasonable degree of certainty how Plaintiff's business *would likely have continued to grow* if it had not been sabotaged by Youngevity's conspiracy with Ms. Walters. This allegation—that Plaintiff's business would have *continued to grow just as it already had*, before Youngevity interfered—is a far cry from the completely "vague allegations" of *Kenner, Nestle* and the other cases cited by Defendant.

Moreover, Defendant's repeated urging of this argument may turn out to be

much ado about nothing, since Plaintiff also has other claims, including a claim for tortious interference with contract, which should entitle it to the same damages for the loss of future sales representatives who would have been recruited by its growing sales force. After all, lost profits are a proper measure of damages for tortious interference with contract (and other claims), and income that would have been generated by future sales reps is simply a portion of Spice Jazz's reasonably-measured lost profits. *See Ghk Assocs. v. Mayer Grp.,* 224 Cal. App. 3d 856, 879, 274 Cal. Rptr. 168, 183 (Cal. App. 1990) (upholding "a damages award (based on lost profits)" against "a subsequent purchaser of the Property . . . which, with actual knowledge of GHK's contractual rights, purchased the Property and conspired to develop the Project in derogation of GHK's rights under the agreements"); *Sargon Enters., Inc. v. Univ. of S. Cal.,* 55 Cal. 4th 747, 775, 149 Cal. Rptr. 3d 614, 635, 288 P.3d 1237, 1254 (Cal. 2012) (noting that "Courts must not eviscerate the possibility of recovering lost profits by too broadly defining what is too speculative. A reasonable certainty only is required, not absolute certainty.").

Accordingly, whether this claim is dismissed or not should ultimately prove meaningless to Spice Jazz's damages model. For this additional reason, Defendant has not presented a compelling case to carve out a special exception to the normally stringent reconsideration standard.

**B.    Plaintiff Has Sufficiently Pleaded Misappropriation of Its Recipes, And Should be Allowed to Use the Process of Discovery to Compile A Comprehensive List of Youngevity Products Based On Stolen Recipes**

In its ruling on Youngevity's last motion to dismiss, this Court dismissed Plaintiff's trade-secret claim related to spice blends and recipes without prejudice, and with leave to amend, holding as follows: "the Court first addresses the trade secret defined as Plaintiff's 'spice blends and recipes.' There are no further details describing this alleged trade secret. Although the Court does not expect Plaintiff to meticulously describe each recipe, Plaintiff must provide more detail to sufficiently

describe the subject matter so that Defendant may determine 'the boundaries' of the trade secret." ECF No. 19, at 15:18-16:1.

In response, Plaintiff amended its Complaint to add the following details:

39. Upon information and belief, after moving to Youngevity, Ms. Walters—who knew she was stealing Plaintiff's culinary products— then tinkered with both the recipes and their names, in order to make their specific contents, and their names, slightly different from what they were before.

40. For instance, to cite one illustrative example among many, she took a spice recipe called "Queen of the Nile Dukkah," containing Egyptian-inspired ingredients and marketed as an Egyptian-inspired product, tinkered with the recipe (while keeping it largely similar), renamed the product "Egyptian inspired Dukkah," and repackaged that as a Youngevity product.

41. To illustrate other examples: Plaintiff owned a "Louisiana Creole Mix;" after Plaintiff's CEO moved to Youngevity, Youngevity suddenly developed, overnight, a "Spicy Cajun Dip Mix."

42. Plaintiff owned a "South African Cape Rub"; after Ms. Walters left, Youngevity suddenly developed, overnight, a "Safari Rub."

43. Plaintiff owned a "Thai Green Curry Dip Mix," which morphed into Youngevity's "Thai Mix."

44. Plaintiff had a "Wasabi Dukkah" spice blend, Youngevity suddenly developed, overnight, a "Japanese Inspired Dukkah." The ingredient mixes which gave trade-secret value to these products, and the associated marketing materials, imagery, etc., were all kept in Plaintiff's headquarters, on password-protected computers in a locked office.

45. Products Plaintiff owned that mysteriously "reappeared" as Youngevity products after Ms. Walters moved to Youngevity include, but are not limited to: Moroccan Mint tea, South African Sunrise Tea, Tandoori Spice, Taco Spice and Guacamole Mix.

46. Moreover, notably, upon information and belief, either the entire "Saveur" line of products marketed by Youngevity or a substantial portion of that line of products, as will be revealed by discovery, bear a striking resemblance to Plaintiff's blends.

47. Defendant Youngevity is aware of which products are contained within its "Saveur" line and is therefore able to determine the scope of the alleged trade secret misappropriation.

48. Since moving to Youngevity, Ms. Walters has been seen at trade shows marketing products that appear highly similar, and are sometimes identically named, to proprietary products that were developed for Plaintiff.

49. The above are merely examples of products which Ms. Walters, with Youngevity's assistance, is known to have misappropriated and marketed while representing herself as a Youngevity agent; the full list of misappropriated products will be revealed through discovery.

SAC ¶¶ 39-49.

Notably, while qualifying these allegations by emphasizing that discovery will reveal the exact contours of Youngevity's theft, these allegations do provide considerable specificity. Based on all appearances, Ms. Walters stole *all* of Plaintiff's recipes, even though not all of them may have been turned into Youngevity products. *Id.* ¶ 39. Additionally, Youngevity is on notice that its entire "Saveur" line of products was derived from Plaintiff's stolen recipes. *Id.* ¶¶ 46-47 Given that the "Saveur" line sprung up overnight after Ms. Walters decamped from Spice Jazz with all of Spice Jazz's recipes. As Plaintiff explains:

137. It would be one thing if Defendants had simply hired Ms. Walters, based on her talents, and allowed her to spend months building up a new business from scratch—developing entirely new recipes that were not based on Plaintiff's products, recruiting sales force members, developing an entirely new base of customers (i.e. product purchasers), and developing entirely new marketing materials and sales strategies without reference to those that had been owned by Plaintiff. But that is not what happened. Ms. Walters decamped and, overnight, integrated Plaintiff's entire business model into Youngevity.

SAC ¶ 137.

In its new motion to dismiss, Youngevity suggests that only recipes that are identical to ones stolen from Spice Jazz can form the basis of a trade-secret misappropriation claim. This misstates the law.

It is enough for Youngevity's recipes to be "substantially similar" to stolen Spice Jazz recipes. *See 205 Corp. v. Brandow*, 517 N.W.2d 548, 552 (Supreme Court of Iowa 1994) (upholding an injunction enjoining parties "from using, divulging, and communicating to anyone else any of the trade secrets or confidential information which includes all or any part of the plaintiff's recipes for pizza sauce, pizza dough or grinders or any substantially similar recipes thereto."); *KatiRoll Co. v. Kati Junction, Inc.,* No. 14-cv-1750 (SAS), 2015 U.S. Dist. LEXIS 129424, at *3-4, *23 (S.D.N.Y. Sep. 25, 2015) (The parties dispute the details of each other's recipes. The defendants assert that their recipes differ from KatiRoll's recipes . . . This dispute creates a credibility contest between KatiRoll and Kati Junction. The task of resolving the credibility issues falls to the fact finder.").

As this Court noted in its prior ruling, at this stage of the proceedings—when Plaintiff has not yet had the opportunity to take any discovery in support of its claim—a meticulous list of each allegedly stolen recipe is not required. Indeed, it would be unfair to dismiss Plaintiff's claim related to recipes that Plaintiff cannot list prior to discovery, without giving Plaintiff the opportunity to take discovery to determine a comprehensive list of Youngevity's current recipes that are based upon tweaked versions of stolen Spice Jazz recipes.

"A party in a trade secrets case 'does not have to spell out the details of the trade secret,' but the party does need to 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, No. SA CV 17-0158-DOC (JCGx), 2017 WL 8220703, 2017 U.S. Dist. LEXIS 219769, at *11 (C.D. Cal. 2017). Plaintiff's Second Amended Complaint has endeavored to do just

that, by alleging with greater specificity how the trade secrets were stolen, listing numerous examples of specific stolen recipes, calling Youngevity's attention to the entire "Saveur" line of products as potentially stolen, and generally putting Youngevity on fair notice of what it is being sued for—with the fair expectation that this claim will take on greater precision and specificity as discovery progresses.

Citing California appellate decisions, federal courts have clarified that "[w]hile reasonable particularity does not require a party to define its trade secret down to the finest detail or require a mini-trial on mis-appropriation before discovery may commence, it does require that the plaintiff make some effort to define the trade secret in a manner that is fair and proper under all the circumstances." *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *9 (N.D. Cal. 2012) (citing *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835, 33 Cal. Rptr. 3d 901, 908 (Cal. App. 2005)).

Trade secret "plaintiffs are not required to plead highly specific facts on improper trade secret use, because such facts often will not be available before discovery." *Motorola, Inc. v. Lemko Corp.,* 609 F. Supp. 2d 760, 771 (N.D. Ill. 2009). Moreover, under California law, "at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate. We question whether any degree of specificity would satisfy that lofty standard. What is required is not absolute precision, but "reasonable particularity." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836, 33 Cal. Rptr. 3d 901, 908 (Cal. App. 2005).

Additionally, applying the federal notice pleading standard as clarified by *Bell Atlantic Corp. v. Twombly*, both in trade-secret cases and in other disputes "[a] plaintiff must still provide only enough detail to give the defendant fair notice of

what the claim is and the grounds upon which it rests . . . This requirement 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of a plaintiff's claims." *Id.* at 764 (trade secret dispute) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). Plaintiff respectfully submits that its Second Amended Complaint meets this notice pleading standard, and that discovery is the proper means to further clarify which Youngevity recipes are based on recipes misappropriated from Plaintiff.

## C. The Allegations in the Complaint Sufficiently State A Basis for Restitution Under *Durell*

Plaintiff would like to explain why it has included a claim for restitution. This request for equitable relief is intended to serve as a safety net if all of Plaintiff's tort claims fail. The Court of Appeals in *Durell v. Sharp Healthcare* has explained that a "plaintiff may choose not to sue in tort, but instead to seek restitution. . ." 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010). However, since claims and requests for relief can be pleaded in the alternative, Plaintiff seeks to include a request for restitution as a back-up request for relief.

To cite one practical example of how this might impact this dispute, it is frequently a disputed question of fact whether certain assets, such as a confidential customer list, qualify as a "trade secret." *Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 1522, 66 Cal. Rptr. 2d 731, 736 (Cal. App. 1997) ("The requirement that a customer list must have economic value to qualify as a trade secret has been interpreted to mean that the secrecy of this information provides a business with a substantial business advantage.").

Similarly, "[i]n addition to possessing actual or potential economic value, the other part of the definition of a trade secret is that the information must have been protected by efforts that are reasonable under the circumstances to maintain its secrecy. . . whether a party claiming a trade secret undertook reasonable efforts to maintain secrecy is a question of fact. . ." *In re Providian Credit Card Cases*, 96

Cal. App. 4th 292, 306, 116 Cal. Rptr. 2d 833, 844 (Cal. App. 2002).

There are, accordingly, numerous fact issues that arise when determining whether particular proprietary information qualifies as a trade secret, and whether it is therefore governed by case law governing misappropriation of trade secrets.

However, if some portion of the assets stolen through the conspiracy between Youngevity and Spice Jazz's former CEO are found by the Court or the jury _not_ to be trade secrets, this does not mean that Spice Jazz should have no recovery at all for the wrongful acts of Youngevity and Ms. Walters.

The Court of Appeals in *Durell* has explained that:

> There are several potential bases for a cause of action seeking restitution. For example. . . **restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, *conversion*, *or similar conduct*.** In such cases, the plaintiff may choose not to sue in tort, but instead to seek restitution on a quasi-contract theory. . .

*Durell*, 183 Cal. App. 4th at 1370, 108 Cal. Rptr. 3d at 699 (emphasis added).

Under *Durell*, Plaintiff believes it has a basis to demand restitution from Youngevity, based on the facts alleged in this Complaint. Youngevity's acts of "conversion," which essentially means theft, "or similar conduct," included stealing Plaintiff's entire business by wrongfully conspiring with Spice Jazz's CEO, while she was still Spice Jazz's CEO, to organize a mass desertion of Plaintiff's key employees and sales force members, and (to the extent they are deemed not to be trade secrets) stealing other valuable assets such as recipes, marketing materials and customer lists. Through this misconduct, Youngevity was unjustly enriched. Spice Jazz's stolen employees, sales force members, recipes, marketing materials and methods—effectively, its entire business—was transferred to Youngevity for the purpose of generating profits for this Defendant.

Plaintiff's request for equitable restitution of these wrongful profits is pled in the alternative and, if for any reason Plaintiff is unable to obtain relief under its other tort and statutory claims, it should be permitted, in the alternative, to seek restitution from Youngevity for the value of the benefits Youngevity wrongfully obtained from Plaintiff, under *Durell*. *Id.*

**D. If the Court Determines That There Are Any Defects in the First Amended Complaint, It Should Grant Leave to Amend So That Plaintiff's Claims Can Be Judged on Their Factual Merits**

Finally, Rule 15 states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has further strengthened this language through its holding in *Forman v. Davis* that "this mandate is to be heeded" and that: "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Plaintiff obviously desires a final adjudication on the validity of its claims, so that it can proceed forward to discovery and a trial. However, to the extent any of these claims remain deficient but could still be salvaged through further amendment, Plaintiff respectfully requests an opportunity to amend its Complaint once more in response to the Court's ruling, rather than risk losing claims based upon anything other than their factual merits.

**IV.**

**CONCLUSION**

For the reasons stated above, Defendant Youngevity International, Inc.'s motion to dismiss should be DENIED.

Respectfully submitted,

**SBAITI & COMPANY, PLLC**



_____

Mazin A. Sbaiti, Esq.
California Bar No. 275089
Michał Zapendowski, Esq.
Texas Bar No. 24075328
*Admitted Pro Hac Vice*
J.P. Morgan Chase Tower
2200 Ross Ave, Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
E: mas@sbaitilaw.com;
jmz@sbaitilaw.com

**Attorneys for Plaintiff**