Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
EMORD & ASSOCIATES, P.C.
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
Phone: (602) 388-8899
Fax: (602) 393-4361
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPICE JAZZ LLC,<br><br>   Plaintiff,<br><br>v.<br><br>YOUNGEVITY INTERNATIONAL, INC., BIANCA REYNE DJAFAR-ZADE and JOHN DOES 1-10,<br><br>   Defendants. | Case No. 3:19-cv-00583-BAS-WVG<br><br>**REPLY IN SUPPORT OF YOUNGEVITY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br><u>**NO ORAL ARGUMENT UNLESS DIRECTED BY THE COURT**</u><br><br>Hearing Date: Monday, December 2, 2019<br><br>Courtroom: 4B<br><br>Judge: Hon. Cynthia Bashant |

/ / /

/ / /

/ / /

/ / /

/ / /

## I. INTRODUCTION

Defendant Youngevity International, Inc. ("Youngevity") submits this reply in support of its Motion to Dismiss Counts Four and Ten, in whole, and Counts Five, Six, Seven, and Eight, in part, for failure to state a claim upon which relief can be granted. As explained in Youngevity's opening motion and in this reply, those Counts should be dismissed with prejudice.

## II. ARGUMENT

### A. The Court Must Dismiss Count Four Because Plaintiff Does Not Identify a Specific Prospective Relationship

Plaintiff's Second Amended Complaint is now its third attempt to plead a cognizable claim for Intentional Interference with Prospective Economic Relationship (Count 4). Plaintiff has consistently failed to identify a single person or entity with which Plaintiff had a prospective economic relationship that was disrupted by Youngevity. *See* Dkt. 1 (Original Complaint); Dkt. 10 (First Amended Complaint, "FAC"); Dkt. 20 (Second Amended Complaint, "SAC"). Plaintiff does not dispute that fact. *See generally* Dkt. 23. Plaintiff instead argues that Count IV should survive for two reasons: (1) Youngevity's motion improperly seeks reconsideration of the Court's prior order finding the claim sufficiently pled; and (2) Plaintiff's general and conclusory allegations are sufficient to state a claim under the law. Both of those arguments must be rejected. *Id*. at 8-12.

#### 1. Youngevity's Motion Is Not a "Motion for Reconsideration"

Plaintiff argues that Youngevity's Motion to Dismiss is a disguised motion for reconsideration of the Court's Order at Docket No. 19 (and thus subject to the reconsideration standard) because Youngevity raised similar argument in its prior Rule 12 motion. *See* Dkt. 23 at 8-10. Courts in the Ninth Circuit reject Plaintiff's position. *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 995–96 (N.D. Cal. 2014) (collecting cases and rejecting the identical argument raised by

Plaintiff). An amended complaint supercedes the previous complaint and renders the preceding complaint without legal effect. *Id*. at 995 (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc)). Because an amended complaint stands as its own document, a defendant may challenge the entire amended complaint, even if argument raised against that complaint could have been raised against an earlier complaint or *were* raised against an earlier complaint. *Uber Techs*, 58 F. Supp. 3d at 995–96 (rejecting the exact argument raised by Plaintiff here); *see also Turner v. Tierney*, No. C12–6231, 2013 WL 2156264 (N.D. Cal. May 17, 2013) (defendant did "not violate[ ] Civil Local Rule 7–9(c), as [defendant's] motion to dismiss the FAC is not a motion for reconsideration of the Court's prior order, but, rather, a new motion addressing a newly filed complaint"); *Bruton v. Gerber Products Company*, No. 12–cv–02412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) (Defendant "is not seeking reconsideration of the Court's prior Order, but rather is responding to [plaintiff's] new complaint."); *Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077 (S.D. Cal. 2010) ("When Plaintiffs filed the FACC, it superseded their previous complaint, and Sony was therefore free to move again for dismissal.").

The court in *Uber Tech* evaluated a similar situation when the plaintiff argued that the reconsideration standard controlled the Court's evaluation of argument raised in a motion for judgment on the pleadings. *Uber Techs*, 58 F. Supp. 3d at 995–96. Collecting Ninth Circuit and California District Court authority, the court rejected the premise that Uber could not reraise arguments against the amended complaint without satisfying the reconsideration standard. *Id*. (collecting authority). Consistent with that precedent, Youngevity's motion is not governed by the reconsideration standard.

That point notwithstanding, this Court never actually addressed the applicable argument in its prior order. *See* Dkt. 19 at 13-14 (only addressing the

"independently wrongful" element of the tort).  Although Youngevity raised the argument in prior briefing, the Court never evaluated, addressed, or mentioned the issue.  *Id*.  The Court therefore provided no prior rationale that would preserve Count IV in the face of controlling precedent.

Finally, Youngevity would satisfy the standard for reconsideration even assuming this Court did consider and reject (without reference or discussion) Youngevity's argument.  That holding would be error as a matter of law because the Court would not have evaluated or applied apposite precedent within California warranting dismissal of Count 4.

### 2. Plaintiff's Second Amended Complaint Fails to Plead the Existence of a Specific Prospective Economic Relationship

To plead a claim for intentional interference with prospective economic relationship ("IIPEA"), a plaintiff must allege: "(1) a **specific economic relationship between the plaintiff and some third person** containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1305 (C.D. Cal. 1996) (citing *Eichman v. Fotomat Corp.*, 871 F.2d 784, 800 (9th Cir. 1989)) (emphasis added); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

Under binding California precedent, Plaintiff's claims fail as a matter of law. In *Westside Center Associates*, the California Court of Appeals directly rejected the argument that allegations like those in the SAC could support a claim for IIPEA.  *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 526-28, 49 Cal. Rptr. 2d 793, 805-07 (1996) (cited with approval by *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 517, 388 P.3d 800, 807 (2017)).  The Court held that a plaintiff alleging IIPEA must allege the existence of

a relationship with a specific third-party that has a likelihood of providing future economic benefit.  *Id.*  In so holding, the Court rejected an "interference with the market" theory which would have permitted a claim, like the one here, premised on protection of the Plaintiff's "economic relationship with the entire market of all possible but as yet unidentified buyers for its property."  *Id.*, 42 Cal. App. 4th at 527, 49 Cal. Rptr. 2d at 806.  Federal district courts, applying California law, have similarly required the identification of a specific third party with whom the plaintiff had an existing relationship.  *See e.g., UMG Recordings v. Global Eagle Entertainment*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015); *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, 17-cv-2574, 2017 WL 7201873, at *11 (S.D. Cal. Aug. 30, 2017); *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, No. 11-cv-565, 2011 WL 5360074, at *5 (S.D. Cal. Nov. 3, 2011); *Maskoud v. Guelton*, No. 3:17-cv-362, 2017 WL 2505887, at *7–8 (S.D. Cal. June 9, 2017).

In 2017, the California Supreme Court reiterated the holding of *Westside* and explained that the law only protects specific, identifiable economic relationships that **existed at the time of the alleged interference**.  *Roy Allan Slurry*, 2 Cal. 5th at 517, 388 P.3d at 807.  An IIPEA claim "traditionally has not protected speculative expectancies" and can only be asserted where "a contract would, with certainty, have been consummated but for the conduct of the tortfeasor."  *Id*.  Thus, under California law, a plaintiff must identify a specific third party with whom it had an existing relationship that was almost "certain[] [to] have been consummated but for the conduct of the tortfeasor."  *Id.*

Here, Plaintiff alleges interference with the entire market of potential future customers.  *See* Dkt. 20 at ¶¶ 18, 23, 122-123 (alleging interference with "future recruits" and potential "new sales force members.").  Plaintiff does not identify a single third party with whom it had an existing relationship that was likely to produce future economic benefit.  *Id*.  Plaintiff does not dispute that fact.  *See*

*generally* Dkt. 23.  Instead, the factual detail that Plaintiff argues supports its claim only lends support for an "interference with the market" theory and does nothing to establish the existence of a concrete and specific economic relationship with a third party.  *Id.* at 11.  Plaintiff points to allegations that describe its business model as one of constant growth and recruitment and argues that such allegations demonstrate a likelihood that future economic relationships would have been developed.  *Id*.  But the California Supreme Court has squarely rejected claims based on that same theory.  *Roy Allan Slurry*, 2 Cal. 5th at 516, 388 P.3d at 806 (the tort "protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will eventually arise.") (internal quotations and citations omitted).  Plaintiff only alleges that because it had a constant growth and recruitment model, interference with its sales force members necessarily prevented the acquisition of new sales force members and customers.  Dkt. 20 at ¶¶ 18, 23, 122-123.  That is precisely the type of speculative expectation and non-specific identification of a third-party that the California Supreme Court ha rejected.  Under California law, Plaintiff's claims are far too speculative to satisfy the stringent standard imposed on an IIPEA claim and the Court must dismiss Count 4.

The Court should dismiss Count 4 with prejudice consistent with *Westside* and *Roy Allen Slurry*.  Plaintiff has had two opportunities to correct this deficiency by identifying a single person or entity with whom or which Defendant interfered.  Although Plaintiff requests leave to amend (Dkt. 23 at 19), it provides no factual basis or argument indicating that these deficiencies could be cured on what would be a fourth attempt at pleading.  Given the stringent standard expressed by the California Supreme Court, Plaintiff will not be able successfully to amend the complaint on its third attempt.  Amendment would be futile.  The Court should dismiss Count 4 with prejudice.

### B. Plaintiff's Claims for Misappropriation of Trade Secrets Must Be Dismissed to the Extent Plaintiff Refuses to Identify Specific Trade Secret Content in the SAC

Youngevity moves to dismiss Counts Five, Six, Seven, and Eight for misappropriation of trade secrets to the extent those Counts are based on Spice Jazz or Youngevity products that are not disclosed in the SAC.  Plaintiff wants a fishing expedition into all of Youngevity's "Saveur" products under the generalized assumption that the entire Saveur line was derived from Spice Jazz trade secrets.  Dkt. 23 at 14.  But the law requires that Plaintiff identify the trade secret information to a degree sufficient for Youngevity to "determine the boundaries of the trade secret[s]" in this case.  *See* Dkt. 19 at 15-16.  Youngevity cannot determine which Spice Jazz recipes were allegedly misappropriated, or which Youngevity products were allegedly created through misappropriation, if the Plaintiff (who bears the burden to allege facts sufficient to put Youngevity on notice) will not name either (1) the Spice Jazz products allegedly copied; or (2) Youngevity's products allegedly derived from those Spice Jazz products.

The Court should reject Plaintiff's argument that it need not identify the products at issue.  Plaintiff misconstrues this Court's prior order.  The Court never held that Plaintiff need not identify the allegedly stolen recipes even by name.  Dkt. 23 at 15 (arguing the Court held that Plaintiff need not identify each allegedly stolen recipe).  The Court actually ruled consistent with the law that, while Plaintiff need not "meticulously describe each recipe" (i.e., its formula, ingredients, etc.), Plaintiff "must provide more detail to **sufficiently describe the subject matter** so that Defendant may determine **'the boundaries'** of the trade secret."  Dkt. 19 at 15 (emphasis added).

Identification of the specific products allegedly misappropriated is necessary detail for Youngevity to understand the boundaries of alleged trade secrets at issue in this case.  Plaintiff cannot simply name Youngevity's entire line of spices and call that sufficient.  Youngevity only asks that the Court require sufficient notice as

to the products at issue in this dispute.  Youngevity's Saveur line contains dozens of products.  Youngevity cannot simply speculate as to which of those products Spice Jazz implicates in the SAC.  Plaintiff admits that the ingredients and recipes for the Youngevity products are actually **different** than those of the Spice Jazz products.  Dkt. 20 at ¶ 39 ("their specific contenets, and their names, [are] slightly different from [Spice Jazz products].").  Aside from the few listed in the SAC, Youngevity has no idea which products are at issue in this case.  *Id.* at ¶¶ 40-45.  Plaintiff has proven capable of tethering Spice Jazz products to Youngevity products where it believes a claim for misappropriation lies.  *Id.* (listing eleven Youngevity products).  Plantiff must provide that basic information for all products allegedly subject to its misappropriation claim as the law requires.  *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, No. 2:18-CV-10342, 2019 WL 4233578, at *4 (C.D. Cal. June 28, 2019) ("Plaintiff fails to sufficiently identify which elements of the InteliClear System are allegedly tade secrets…. By only identifying '*some*' of its trade secrets, Plaintiff leaves open the possibility that it might later argue that other unnamed elements of the InteliClear System are trade secrets as well.") (italics in original).

      Moreover, because the products are admittedly not identical, Plaintiff's case must advance under a theory that Youngevity's products were "derived" from Plaintiff's trade secrets.  *See Verigy US, Inc. v. Mayder*, No. C-07-04330, 2008 WL 564634, at *7 (N.D. Cal. Feb. 29, 2008); *Jan Marini Skin Research, Inc. v. Allure Cosmetic USA, Inc.*, No. A108613, 2007 WL 1508686, at *18 (Cal. Ct. App. May 24, 2007), *as modified on denial of reh'g* (June 25, 2007) (unpublished).  That theory of liability is less discernible than standard misappropriation claims because it requires the Plaintiff to prove that infringing products had the "same essential characteristics, . . . even if the proportions of ingredients were somewhat different" to the trade secret protected products.  *Jan Marini*, No. A108613, 2007 WL 1508686, at *18.  Whether a product has the "same essential characteristics,"

albeit different proportions of ingredients, is a subjective determination that requires more detail from the Plaintiff to place Youngevity on proper notice. Youngevity cannot be expected to discern which products within its Saveur line are similar enough under the law (according to Plaintiff) to constitute trade secret misappropriation. As a result, the Court must dismiss Plaintiff's misappropriation claims to the extent that those are based on products not specifically identified in the SAC.

That approach is not only mandated under the precedent, but also practical to avoid burdensome and boundless discovery practice. Rules 1 and 26(b)(1) require the just and speedy resolution of disputes by limiting discovery in a federal matter to issues that are relevant and proportional. Plaintiff's Opposition signals that it intends to prove potential claims through broad discovery. Plaintiff's order of operations is improper. Discovery is not an invitation to fish through an opponents sensitive information hoping to discover evidence of tortious activity. Rather, Plaintiff has the burden *now* to present operative claims, and has the ability to do so through comparison of public information regarding both Plaintiff's and Youngevity's spice offerings. If this Court permits Plaintiff to sweep dozens of unidentified products into litigation on the basis that "discovery will reveal" information necessary to identify which products are even subject to the claim, the scope and burdens of discovery will quickly become overwhelming. The broader the contours of that discovery, the more burdensome this case will become on the parties and the Court. Enforcing the rigors of the law now and requiring Plaintiff to advance claims limited to those which Plaintiff can properly articulate in the SAC will further the goal of maintaining proportional discovery on issues in controversy. To the extent Plaintiff later believes that additional facts warrant broader claims, it can seek leave of Court to amend the Complaint.

For these reasons, the Court should dismiss all claims for misappropriation of trade secrets that are based on products not specifically named in the SAC.

### C. The Court Must Dismiss Plaintiff's Claim for Restitution with Prejudice

Plaintiff's Tenth Cause of Action restates the claim for "restitution" that this Court earlier dismissed. *See* Order at Dkt. 19 at 12. This Court dismissed that claim because Plaintiff failed to allege facts sufficient to establish the existence of a "quasi-contractual relationship" between Plaintiff and Youngevity. *Id*. ("Plaintiff has not alleged any facts to show a quasi-contractual relationship exists.").

In response to that Order, Plaintiff added boilerplate legal conclusions to the SAC that allege a "quasi-contractual relationship," but **not facts** to support the existence of such a relationship. *See* Dkt. 20 at ¶¶ 191-92. Plaintiff does not even address the quasi-contract element or the Court's order requiring satisfaction of that element. Dkt. 23 at 17-19. Instead, Plaintiff suggests that the Court should permit the restitution claim to stand as a "safety net" in the event that Plaintiff fails to prove other torts. *Id*. But while a claim for restitution can be pled as an alternative claim to a tort or contract theory, the law still requires that the elements of a restitution claim be pled under the appropriate pleading standard. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010) (holding that restitution may be sought if a Plaintiff can allege facts sufficient to impose equitable obligations based on a quasi-contract theory). Plaintiff has failed to do so and provides no authority supporting the application of a quasi-contract restitution theory on the facts alleged in the SAC.

Plaintiff argues that because *Durrell* identifies "conversion" as a tort that *may* provide a basis for restitution under a quasi-contract theory, Plaintiff can seek quasi-contract restitution in this case. But a quasi-contractual relationship must still be predicated on an actual relationship between the parties, which Plaintiff has not identified in the SAC. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (a restitution claim under California law requires a prior relationship between the parties). Acts of "conversion" do not create the required relationship *ipso facto*. While circumstances that give rise to a claim for conversion *could*

REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
9

involve a relationship between the parties, they could also arise where no interaction existed between the parties (as in this case) and, as a result, an alternative quasi-contract theory would not lie.  The question here is not whether Spice Jazz claims Youngevity stole its property, but whether that alleged conversion occurred within an existing relationship that included representations between the parties giving rise to a claim in quasi-contract.  On that score, the claim clearly fails based on the allegations in the SAC.  Plaintiff's attempt to bootstrap its restitution claim through a conversion tort would nullify the independent requirement for a quasi-contractual relationship between the parties.

Thus, the Court must dismiss Count Ten with prejudice because leave to amend would be futile.

### III. CONCLUSION

This Court should dismiss Counts Four and Ten with prejudice for failure to state a claim.  The Court should dismiss Counts Five, Six, Seven, and Eight with prejudice to the extent they are predicated on products or recipes not specifically identified in the SAC.

DATE:  November 21, 2019           Respectfully submitted,

**EMORD & ASSOCIATES, P.C.**

 /s/ Peter A. Arhangelsky
Peter A. Arhangelsky (SBN 291325)
2730 S. Val Vista Dr., Bldg. 6, Ste. 133
Gilbert, AZ 85295
*Counsel for Defendant Youngevity International*