1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SPICE JAZZ LLC,

                              Plaintiff,

        v.

YOUNGEVITY INTERNATIONAL, INC. *et al.*,

                              Defendants.

Case No. 19-cv-583-BAS-WVG

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**

**[ECF No. 39]**

        Presently before the Court is Plaintiff Spice Jazz LLC's Motion to Dismiss Counterclaim.  ("Mot.," ECF No. 29.)  Defendant Youngevity International, Inc. filed an opposition to the Motion, ("Opp'n," ECF No. 45), to which Spice Jazz replied, ("Reply," ECF No. 58).  The Court finds resolution of this matter is suitable without the need for oral argument. *See* Civ. L.R. 7.1(d)(1).   For the reasons discussed below, the Court **GRANTS** the Motion.

**I.     FACTUAL ALLEGATIONS**

        Plaintiff Spice Jazz sold culinary recipes and spices to customers using a multi-level marketing ("MLM") sales force composed of individual sales representatives. (Second Amended Complaint, "SAC," ECF No. 20, ¶ 2.)  Sales force members were recruited, provided with marketing materials and strategies, entrusted with secret

1    recipes, and encouraged to sell the products throughout Australia and the United
2    States.   (*Id*.)   Spice Jazz hired Colleen Walters to be its CEO, and Walters
3    successfully recruited sales team members and ran the company's operation.   (*Id.*
4    ¶¶ 19, 21.)   But during her employment with Spice Jazz, Walters worked with
5    Defendant Youngevity, a competitor also running an MLM sales force.   (*Id.* ¶¶ 21,
6    27.)   Walters "hatched a scheme" to steal Spice Jazz's business and bring it to
7    Youngevity.   (*Id.* ¶¶ 27, 28.)   Walters then left Spice Jazz, taking with her all of its
8    sales force and "a treasure trove of proprietary recipes and products."   (*Id.* ¶ 31.)
9    Youngevity allegedly "look[ed] the other way" when Walters brought over a wealth
10   of valuable information, or maybe conspired with her in a plan to "sabotage Spice
11   Jazz's business operation."   (*Id.* ¶¶ 66, 71.)   The subject of the present Motion is
12   Youngevity's counterclaim against Spice Jazz for violation of the Lanham Act, 15
13   U.S.C. § 1125(a).   ("Counterclaim," ECF No. 36.)

## II.    LEGAL STANDARD

15   A complaint must plead sufficient factual allegations to "state a claim to relief
16   that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal
17   quotation marks and citations omitted).   "A claim has facial plausibility when the
18   plaintiff pleads factual content that allows the court to draw the reasonable inference
19   that the defendant is liable for the misconduct alleged."   *Id.*

20   A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
21   Procedure tests the legal sufficiency of the claims asserted in the complaint.   Fed. R.
22   Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).   The court
23   must accept all factual allegations pleaded in the complaint as true and must construe
24   them and draw all reasonable inferences from them in favor of the nonmoving party.
25   *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).   To avoid a Rule
26   12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather,
27   it must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell*
28   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A Rule 12(b)(6) dismissal may

1   be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient

2   facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare*

3   *Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police*

4   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

5   **III.   ANALYSIS**

6       **A.   <u>The Entities</u>**

7         Spice Jazz first takes issue with Youngevity's inclusion of Spice Jazz's

8   "Australian sister company," Your Inspiration At Home Pty. Ltd ("YIAH") as a

9   counterclaimant.  (Mot. at 2.)  Spice Jazz contends that it and YIAH are separate

10   legal entities and YIAH, an Australian company, cannot be liable for Lanham Act

11   violations. (*Id.*)  Youngevity does not disagree that YIAH is an Australian company,

12   but instead argues the Court should apply the Lanham Act extraterritorially.  (Opp'n

13   at 21.)

14         While the Lanham Act does not explicitly limit its scope to domestic conduct,

15   like all statutes, it is subject to the presumption against extraterritoriality, which

16   reflects the principle that, in general, "United States law governs domestically but

17   does not rule the world." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090,

18   2100 (2016) (citation omitted).  The Ninth Circuit has held that this presumption has

19   been rebutted in part with regard to the Lanham Act, and therefore the Act can be

20   applied to foreign conduct when

> 21 (1) the alleged violations . . . create some effect on American foreign
> 22 commerce; (2) the effect [is] sufficiently great to present a cognizable
> injury to the plaintiffs under the Lanham Act; and (3) the interests of
> 23 and links to American foreign commerce [are] sufficiently strong in
> 24 relation to those of other nations to justify an assertion of extraterritorial
> authority.
> 25

26   *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016) (alterations in original)

27   (citation omitted).

28         Youngevity refers to Spice Jazz and YIAH collectively as "the Spice Jazz

– 3 –

1   Entities" and claims their advertisements caused American consumers to buy Spice
2   Jazz's products; therefore, the ads had an effect on American commerce.  (Opp'n at
3   22.)  But, Youngevity lumping the two parties together does not sufficiently allege
4   that YIAH, an Australian-based entity, was taking any action that affected American
5   commerce.  Youngevity states in one portion of its counterclaims that "YIAH is a
6   now defunct Australian proprietary limited company that sold food products in
7   Australia."  (Counterclaim ¶ 6.)  Youngevity later alleges that YIAH sold food
8   products in the United States, (*id.* ¶ 16); but this contradictory assertion is
9   unsupported.  There are no allegations that YIAH, as opposed to Spice Jazz, sold
10  food products or advertised in this country.  "Rule 9(b) does not allow a complaint
11  to merely lump multiple defendants together but 'requires plaintiffs to differentiate
12  their allegations when suing more than one defendant . . . and inform each defendant
13  separately of the allegations surrounding his alleged participation in the fraud.'"
14  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation omitted).[1]
15  Youngevity has not done so and therefore has not established that the Lanham Act
16  should apply to YIAH.  The Court dismisses YIAH as a counterclaimant without
17  prejudice.

18      **B.    Lanham Act**

19      Youngevity brings a false advertising claim under 15 U.S.C. § 1125(a).  The
20  counterclaim has two parts.  First, Youngevity claims that Spice Jazz advertised that
21  all of its products were available for purchase, but Spice Jazz did not have "many of
22  their products" available for purchase and shipment.  (Counterclaim ¶ 23.)  Second,
23  Youngevity claims Spice Jazz advertised that individuals would earn "extra income"
24  by becoming consultants, but Spice Jazz has not paid its consultants all commissions
25  owed.  (*Id.* ¶ 35.)  Youngevity claims it was injured because customers could have

26  _____

27  [1] As noted below, Federal Rule of Civil Procedure 9(b) applies to Youngevity's false advertising claims.

28

purchased its products, and individuals could have worked as its consultants, but instead chose to buy from or work for Spice Jazz due to this advertising.

### 1.   Claim 1: Products are Available for Purchase and Shipment

Spice Jazz moves to dismiss this counterclaim for a variety of reasons, the first being that Youngevity does not have standing to bring the claim.

#### a.   Standing

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (quoting 15 U.S.C. § 1125(a)(1)). The Supreme Court has determined that a statutory cause of action extends only to plaintiffs "whose interests 'fall within the zone of interests protected by the law invoked,'" *id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and "whose injuries are proximately caused by violations of the statute," *id.* at 1390. Therefore, to allege statutory standing under the Lanham Act, a party must first meet the "zone of interest" test*. Id.* Second, a party must sufficiently allege that the injuries were proximately caused by a violation of the statute. *Id.*

The "zone of interest" test is not a particularly demanding one, and the benefit of the doubt goes to the one alleging the cause of action. *Lexmark*, 134 S. Ct. at 1389 (citing *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) ("[W]e have always conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff.")). "[T]he test forecloses suit only when a [party's] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *Id.* (citation omitted). In the false advertising context, Congress' goal was to protect persons engaged in commerce against unfair competition. *Id.* Thus, "to come within the zone of interests in a suit for false advertising under § 1125(a)," a party must show an injury to a commercial interest in reputation or sales. *See id.* at 1390.

1    To establish proximate cause under section 1125(a), a party "ordinarily must
2 show economic or reputational injury flowing directly from the deception wrought
3 by the . . . advertising; and that that occurs when deception of consumers causes them
4 to withhold trade from the plaintiff." *Lexmark*, 134 S. Ct. at 1391.  Although it may
5 be more difficult to establish proximate causation when the parties do not directly
6 compete, there need not be an allegation that the parties are in direct competition
7 with each other.  *Id.* at 1392.

8    Spice Jazz contends Youngevity lacks standing to bring this claim because it
9 did not sell competing products within the relevant time frame.  Youngevity claims
10 from June 2016 through at least June 2017, it competed with Spice Jazz for customers
11 and distributors of food products.  (Counterclaim ¶ 17.)  At this point, the Court
12 cannot determine whether Youngevity has standing to bring this claim because its
13 allegations lack the necessary specificity.  Youngevity claims that Spice Jazz
14 advertised that all of its products were available for purchase, (*Id.* ¶ 21, 22) but in
15 fact "did not have many of [its] products available for sale and shipment." (*Id.* ¶ 23.)
16 It claims that customers purchased Spice Jazz's products instead of Youngevity's
17 products.  (*Id.* ¶ 31.)  A broad allegation that the two "competed" for customers is
18 insufficient.  Youngevity does not specify which products were allegedly
19 unavailable, nor that Youngevity was selling a similar product at the time, such that
20 the Court could determine that Youngevity was injured by this claim.  *See*
21 *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-4189-PHX-JAT,
22 2019 WL 3840988, at *4 (D. Ariz. Aug. 15, 2019) (finding the plaintiff did not
23 sufficiently allege a concrete and particularized injury because it did "not point to
24 any specific licenses or ingredients for which sales decreased as a result of
25 Defendant's alleged misconduct").[2]

26

27 ─────────────
28 [2] Youngevity points to Spice Jazz's complaint wherein it alleges the two companies were direct competitors.  (SAC ¶ 27.)  However, the complaint makes clear that the two were competitors because Youngevity allegedly stole Spice Jazz's trade secrets.  For example, Spice Jazz claims it

– 6 –

Youngevity attached an exhibit to its counterclaim, but the document does not cure the lack of specificity.  The exhibit appears to be screenshot of consumer reviews regarding "Your Inspiration at Home Spice Blends" which are three jars of spices sold in a pack.[3]  (ECF No. 36-1.)   The screenshot shows comments by individuals claiming they did not receive their product after purchase.  This exhibit, which Youngevity does not describe or refer to in the counterclaim, provides little clarity into the claim.  First, the time period of the reviews is unclear, as the comments were published anywhere from "3 years ago" to "3 months ago" but the date the exhibit itself was screenshotted is unknown.  (*Id.*)  There is no indication that when Spice Jazz was advertising it had products in stock, the individuals were complaining they did not receive the product.  Second, as noted above, Youngevity does not specify that it sold something similar to this spice blends, such that it was injured by Spice Jazz's advertising of the product' availability.  In sum, Youngevity has not sufficiently alleged it has standing to bring this claim.

### b.    Whether Youngevity States a Claim

Assuming Youngevity can allege standing, the next issue is whether the claim Spice Jazz made regarding the availability of its products may constitute false advertising.

A claim for false advertising requires that a plaintiff show that (1) a statement made in an advertisement is false or misleading; (2) that "it actually deceives or has the tendency to deceive a substantial segment of its audience"; (3) that it is "likely to influence purchasing decisions"; and (4) that the "plaintiff has been or is likely to be

---

had a "Wasabi Dukkah" spice blend, and Youngevity "suddenly developed, overnight, a 'Japanese Inspired Dukkah'" using Spice Jazz's trade secrets.  (*Id.* ¶ 44.)  Spice Jazz does not contend that the two companies were selling similar products before the alleged trade secret theft.
[3] As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citation omitted). But the court may consider "material which is properly submitted as part of the complaint" which means the documents are "physically attached to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The Court can consider the document because it is attached to Youngevity's counterclaim.

injured by the false advertisement." *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 828–29 (9th Cir. 2011).  Federal Rule of Civil Procedure 9(b) applies to Lanham Act claims that are grounded in fraud.  *Julian Bakery, Inc. v. Healthsource Int'l, Inc*., No. 16CV2594-JAH (KSC), 2018 WL 1524499, at *4 (S.D. Cal. Mar. 28, 2018); *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018) ("Although the Ninth Circuit has not definitively spoken as to whether Rule 9(b) applies to Lanham Act claims,  the better reasoned [district court] authority is that, where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable.").  As detailed below, the allegations in support of Youngevity's Lanham Act claims are based upon Spice Jazz's intentional misrepresentations, thus they are grounded in fraud and Rule 9(b) applies.  *See Julian Bakery*, 2018 WL 1524499, at *4 (finding same).

Youngevity alleges Spice Jazz claimed all of its products were available for sale and shipment from July 2016 through June 2017.  (Counterclaim ¶ 19.)  These claims were made in Spice Jazz's catalogue, on its Facebook page, and by its President.  (*Id.* ¶¶ 21–26.)  Youngevity claims Spice Jazz actually did not have "many of their products" available for purchase and shipment.  (*Id.* ¶ 23.)

First, a false advertising claim must misrepresent "the nature, characteristics, qualities, or geographic origin" of the product.  15 U.S.C. § 1125(a)(1)(B).  Spice Jazz argues that a claim regarding the quantity or availability of a product does not qualify under this section.  In response, Youngevity points to a few out-of-district cases that support its position.  (Opp'n at 14); *see*, *e.g., Gristede's Foods, Inc. v. Unkechauge Nation*, No. 06-CV-1260 (CBA), 2008 WL 3334032, at *4 (E.D.N.Y. Aug. 8, 2008) ("[W]hen an advertisement contains a representation regarding stocking and availability of products, and a defendant fails to stock the advertised goods, Lanham Act claims for literal falsity or misleading advertising may be maintained.").  Spice Jazz admits that various district courts have held that

– 8 –

misrepresenting the quantity of goods in stock can support a Lanham Act claim. (Mot. at 11 (citing *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc*., 83 F. Supp. 2d 1016 (D. Minn. 2000) and *Tire Kingdom v. Morgan Tire & Auto*, 915 F. Supp. 360, 368 (S.D. Fla. 1996).)

As both parties acknowledge, this issue does not appear to be definitively decided in this circuit, as there is no binding authority either way on whether misrepresenting the quantity or availability of a product can form a false advertising claim. And Spice Jazz points to no authority from outside this circuit that supports its position on this specific issue. The Court agrees with the courts that have held a product's availability goes to that product's characteristics. As the *Surdyk's Liquor* court points out, this position is supported by the Federal Trade Commission ("FTC")'s advertising regulations. The FTC,

> the administrative agency charged by Congress with preventing unfair competition, *see* 15 U.S.C. §§ 45, 46, has promulgated a regulation stating that "no advertisement containing an offer to sell a product should be published when the offer is not a bona fide effort to sell the advertised product." 16 C.F.R. § 238.1. The FTC suggests that an advertised offer will not be considered bona fide when it "fail[s] to have available at all outlets listed in the advertisement a sufficient quantity of the advertised product to meet reasonably anticipated demands, unless the advertisement clearly and adequately discloses that supply is limited and/or the merchandise is available only at designated outlets." *Id.* § 238.3(c). Thus, under the plain language of the statute and the FTC's advertising regulations, [defendant's] alleged conduct would appear to fall squarely within the ambit of the Lanham Act.

*Surdyk's Liquor*, 83 F. Supp. 2d at 1021. The Court agrees that whether or not a product is available is a characteristic of that product. Thus, this claim may form a Lanham Act false advertising claim.

However, this claim still suffers from the deficiency noted above—lack of specificity. Youngevity provides no detail as to what products Spice Jazz advertised as available but were in fact not available. Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to

constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).   Particularity requires the party to allege the "who, what, when, where, and how" of the alleged fraudulent conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and in this case, the "what" is missing.

For these reasons, the Court **DISMISSES** this portion of the false advertising counterclaim, but grants Youngevity leave to amend.

## 2.   Claim 2: Individuals Could Earn Income by Becoming Consultants

The next claim is that Spice Jazz advertised through its catalogue that individuals could earn "extra income" by becoming consultants, and as a result, people enrolled as Spice Jazz consultants.   (Counterclaim ¶¶ 32, 38.)   Youngevity claims this advertisement was false because Spice Jazz "did not pay the Consultants all commissions owed."  (*Id.* ¶ 34.)

The Court takes issue with the allegation that the claim is false or misleading. The claim as alleged is broad: people can make money by becoming a consultant.  If Spice Jazz did not pay the consultants every dollar they earned, this does not mean that the consultants did not make "extra income"—thus, the advertisement is not alleged to be false or misleading.   The Court therefore **GRANTS** the Motion to Dismiss the false advertising counterclaim as it relates to the consultants. Youngevity is granted leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Spice Jazz's Motion to Dismiss Counterclaim.   Filed concurrently with this order is an order dismissing Spice Jazz's second amended complaint (for unrelated reasons).   The Court finds it most logical to allow Spice Jazz to file an amended complaint and then allow Youngevity to file an answer to that complaint with an amended counterclaim, if it wishes.   Thus, any amended complaint must be filed <u>on or before July 17, 2020.</u>  Any

response to the amended complaint must be filed <u>on or before August 17, 2020.</u>  If Spice Jazz does not file an amended complaint by said date, any amended answer to the second amended complaint must be filed <u>on or before July 31, 2020.</u>

      **IT IS SO ORDERED.**

**DATED: June 19, 2020**

Hon. Cynthia Bashant
United States District Judge