1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  SPICE JAZZ LLC, | Case No. 19-cv-583-BAS-WVG |
| 12                  Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| 13    v. | **[ECF No. 46]** |
| 14  YOUNGEVITY INTERNATIONAL, INC. *et al.*, | |
| 15                  Defendants. | |
| 16 | |
| 17 | |

18        Presently before the Court is a Motion by Defendant Bianca Reyne Djafar-

19  Zade to dismiss Plaintiff Spice Jazz LLC's claims against her.  ("Mot.," ECF No.

20  46.)  Spice Jazz filed an opposition to the Motion, ("Opp'n," ECF No. 46),[1] to which

21

22

23  [1] Djafar-Zade attached a declaration to her Motion (ECF No. 46-2) and Spice Jazz asks the Court
to consider a declaration it submitted on the docket previously, (Opp'n at 5 (citing ECF No. 29-4).
24  As a general rule, "a district court may not consider any material beyond the pleadings in ruling on
a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citation omitted).
25  There are two exceptions to this.  *Lee v. City of Los A*ngeles, 250 F.3d 668, 688 (9th Cir. 2001).
First, the court may consider "material which is properly submitted as part of the complaint" which
26  means the documents are either "physically attached to the complaint" or if the "complaint
necessarily relies" on them and their authenticity is not contested.  *Id.*   Second, a court may
27  judicially notice "matters of public record."  Fed. R. Evid. 201; *Mack v S. Bay Beer Distib.*, 798
F.2d 1279, 1282 (9th Cir. 1986).  Because neither of these exceptions apply, the Court does not
28  consider the declarations in analyzing the present Motion.

Djafar-Zade replied ("Reply," ECF No. 47).  The Court finds resolution of this matter is suitable without the need for oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons discussed below, the Court **GRANTS** the Motion.

## I.      FACTUAL ALLEGATIONS

Plaintiff Spice Jazz sold culinary recipes and spices to customers using a multi-level marketing ("MLM") sales force composed of individual sales representatives. (Second Amended Complaint, "SAC," ECF No. 20, ¶ 2.)  Sales force members were recruited, provided with marketing materials and strategies, entrusted with secret recipes, and encouraged to sell the products throughout Australia and the United States.  (*Id*.)  Spice Jazz hired Colleen Walters to be its CEO, and Walters successfully recruited sales team members and ran the company's operation.  (*Id.* ¶¶ 19, 21.)  But during her employment with Spice Jazz, Walters worked with Defendant Youngevity, a competitor also running an MLM sales force.  (*Id.* ¶¶ 21, 27.)  Walters "hatched a scheme" to steal Spice Jazz's business and bring it to Youngevity.  (*Id.* ¶¶ 27, 28.)  Walters then left Spice Jazz, taking with her all of its sales force and "a treasure trove of proprietary recipes and products."  (*Id.* ¶ 31.) Youngevity allegedly "look[ed] the other way" when Walters brought over a wealth of valuable information, or maybe conspired with her in a plan to "sabotage Spice Jazz's business operation."  (*Id.* ¶¶ 66, 71.)

Spice Jazz brings claims against Youngevity and against Bianca Reyne Djafar-Zade.  Djafar-Zade was an employee on Spice Jazz's payroll but "never actually" did any work, by virtue of being Walters' daughter, but continuously submitted payroll statements claiming she had worked for the company and requesting payment.  (*Id.* ¶¶ 90, 92.)  Djafar-Zade moves to dismiss the five causes of action brought against her.

## II.     LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

## III. ANALYSIS

### A. <u>Fraud</u>

Under its fraud claim, Spice Jazz contends that Djafar-Zade collected a substantial salary by representing that she was performing valuable services, but "was performing no services, or very few services, for Spice Jazz, and was only collecting a salary by virtue of the fact that her mother was the CEO of the company." (SAC ¶¶ 87–89.)  Djafar-Zade "would never actually perform the work assigned to her." (*Id.* ¶ 90.)  The fraudulent misrepresentations were the statements "she delivered to Plaintiff claiming hours worked and requesting payment." (*Id.* ¶ 92.)

#### 1. Rule 9(b)

Under California law, the elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lovejoy v. AT & T Corp.*, 92 Cal. App. 4th 85, 93 (2001) (citation and emphasis omitted). Federal Rule of Civil Procedure 9(b) demands that allegations of fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Djafar-Zade argues that the fraud claim should be dismissed pursuant to Rule 9(b). She claims Spice Jazz "does not allege what specific representations [she] made, to whom they were made, or when they were made." (Mot. at 9.) The Court disagrees; Spice Jazz has alleged that "every statement [Djafar-Zade] delivered to Plaintiff claiming hours worked and requesting payment" was fraudulent (*see* SAC ¶ 92) and has provided detail as to why this conduct was fraudulent. This is sufficient under Rule 9(b).

### 2.    Economic Loss Rule

Djafar-Zade also argues the fraud claim is barred by the economic loss rule. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 987 (2004). Courts have applied the economic loss rule to bar fraud claims where "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." *Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*, 629 F.Supp.2d 1135, 1146 (E.D. Cal. 2009). To maintain a fraud claim based on the same factual allegations as a breach of contract claim, a plaintiff must show that "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Robinson*, 34 Cal. 4th at 989–90.

Spice Jazz claims that Djafar-Zade engaged in payroll fraud, not merely a breach of contract. The fraud claim is based not only on Djafar-Zade not performing work but also on her submission of false paystubs attesting that she had done work and her receipt of money as a result. Spice Jazz claims that this case is like *Robinson*. There, the California Supreme Court addressed the issue of whether the economic loss rule would bar "claims for intentional misrepresentation of fraud in the performance of a contract." 34 Cal. 4th at 984. The plaintiff manufactured helicopters and contracted with the defendant to manufacture and supply it with a particular part. *Id.* at 985. The plaintiff was required by the Federal Aviation Administration to obtain a "type certificate," and "[e]very aircraft made pursuant to the certificate must be produced exactly in accordance with that certificate." *Id.* The defendant submitted certificates stating that the part had been "manufactured in conformance with [plaintiff's] written specifications." *Id.* at 985–86. In analyzing the economic loss rule, the Court reasoned the defendant engaged in conduct that was "separate from the breach" of contract, i.e., the provision of non-conforming goods. Specifically, when the defendant submitted "false certificates of conformance, [it] unquestionably made affirmative representations that [plaintiff] justifiably relied on to its detriment. But for [defendant's] affirmative representations, [plaintiff] would not have accepted delivery and used the nonconforming [part] over the course of several years . . . ." *Id.* at 990–91. In sum, the defendant engaged in "fraud . . . a tort independent" of the breach of contract, and the economic loss rule did not bar recovery on the claims for fraud and misrepresentation. *Id.*

Indeed, Djafar-Zade allegedly engaged in conduct separate from simply not performing work as per her contract; she also submitted false paystubs. However, damages resulting from her conduct are purely economic, as the claim is that she was unjustly enriched by the paychecks. (*See* SAC ¶¶ 93–95 (Spice Jazz claims it was damaged because Djafar-Zade induced it to pay her for the hours supposedly

worked).)  The *Robinson* court specified, "[o]ur holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss."  34 Cal. 4th at 993.  Because Spice Jazz's damages are purely economic, and no other damages are claimed, the fraud claim is barred.  The Court **GRANTS** the Motion to Dismiss this claim.

Spice Jazz requests leave to amend this claim to include fraudulent inducement.  "The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: '[I]t has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud.'" *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)).  Because the Court finds it possible that Spice Jazz can plead the fraud claim so that it is not barred by the economic loss rule, it grants leave to amend.

### B.   Breach of Fiduciary Duty

Spice Jazz agrees this cause of action should be dismissed; accordingly, the Court **DISMISSES** it with prejudice.

### C.   Misappropriation

Spice Jazz brings claims for misappropriation of trade secrets against all Defendants.  Djafar-Zade points out that Spice Jazz makes no misappropriation allegations specifically against her, but instead brings claims against Defendants generally.  The Court agrees.  There are no allegations that Djafar-Zade used or even had access to any trade secrets.  Spice Jazz does not address this cause of action in its Opposition, only claiming that it "is prepared to address these issues through amendment."  (Opp'n at 7.)  The Court **GRANTS** the Motion to Dismiss this claim and dismisses the misappropriation claims without prejudice.

### D.   Aiding and Abetting

Spice Jazz alleges all Defendants aided and abetted Walters' breach of

– 6 –

fiduciary duty, which is alleged to be her transfer of Spice Jazz's trade secrets and employees to Youngevity.  (SAC ¶ 176.)  Djafar-Zade first moves to dismiss this claim as insufficiently pled.  Similar to the misappropriation claims, this claim contains no specific allegations against Djafar-Zade.  It is insufficient to broadly allege that Defendants assisted Walters with the breach without including any specific information relevant to Djafar-Zade and her role.  The Court dismisses this claim but also analyzes Djafar-Zade's second argument for dismissal.

Djafar-Zade argues the aiding and abetting claim is preempted by the California Uniform Trade Secrets Act ("CUTSA").  Under CUTSA, a party may recover for the "actual loss" or other injury caused by the misappropriation of trade secrets.  Cal. Civ. Code § 3426.3. CUTSA defines misappropriation as (1) the improper acquisition of a trade secret or (2) the nonconsensual disclosure or use of a trade secret.  *Id.* § 3426.1(b).  "CUTSA provides the exclusive civil remedy for conduct falling within its terms." *Silvaco Data Sys. v. Intel Corp*., 184 Cal. App. 4th 210, 236 (2010), disapproved on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

Because CUTSA provides an exclusive remedy, courts have reasoned it displaces common law tort claims in two circumstances. First, CUTSA displaces claims that are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009).  Stated differently, CUTSA displaces tort claims where they "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Silvaco*, 184 Cal. App. 4th at 240.  Second, CUTSA displaces "all claims premised on the wrongful taking and use of confidential business and proprietary information, even if that information does not meet the statutory definition of a trade secret." *ChromaDex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019).

Courts have held that claims for aiding and abetting the misappropriation of trade secrets fall under the same nucleus of facts as a claim for misappropriation of trade secrets.  *See ATS Prods., Inc. v. Champion Fiberglass, Inc*., No. 13-cv-2403-SI, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015); *RSPE Audio Sols., Inc. v. Vintage King Audio, Inc.*, 2013 WL 100178, at *2 (C.D. Cal. Jan. 7, 2013).  Spice Jazz points out that its aiding and abetting claim relates to Walters' breach of fiduciary duty, which includes her misappropriation of trade secrets and also her recruitment of Spice Jazz's sales-force members.  (*See* SAC ¶ 176.)  But Spice Jazz defined its trade secrets as its customers, its spice blends, and its "sales force members who were trained to market the products." (*Id.* ¶ 59.)[2]  Thus, the breach of fiduciary duty claim appears no different than the misappropriation claim.  The Court finds the claim for aiding and abetting Walters' breach of fiduciary duty falls under the same nucleus of facts as the claim for misappropriation of trade secrets.  The Court **GRANTS** the Motion to Dismiss this claim.  Because the claim could be amended so that it is not preempted, the Court grants Spice Jazz leave to amend.

### E.   Restitution

Spice Jazz brings a claim for restitution against Djafar-Zade for receiving a salary despite performing no work for the company.  (SAC ¶ 189.)

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  However, a court may construe an "unjust enrichment" claim as "an attempt to plead a cause of action giving rise to a right to restitution . . . in lieu of contract damages," such as "when an express contract was procured by fraud, is unenforceable, or is ineffective" or when a "plaintiff chooses to seek restitution on a quasi-contract theory instead of suing in tort." *GA Escrow, LLC v. Autonomy Corp*. PLC, No. C 08–01784 SI, 2008 WL 4848036, at *7

---

[2] The Court does not opine as to whether the sales force members can constitute trade secrets.

(N.D. Cal. Nov. 7, 2008) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 385 (2004)); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (listing the bases for a cause of action seeking restitution).

The Court may so construe Spice Jazz's restitution claim, but Spice Jazz has not pled any contractual relationship with Djafar-Zade that was procured by fraud or is otherwise unenforceable. Nor has Spice Jazz alleged any the existence of a quasi-contractual relationship. The Court **DISMISSES** the restitution claim without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Djafar-Zade's Motion to Dismiss, as detailed herein. Any amended complaint must be filed <u>on or before July 17, 2020.</u>

**IT IS SO ORDERED.**

**DATED: June 19, 2020**

Hon. Cynthia Bashant
United States District Judge