# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPICE JAZZ LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>YOUNGEVITY INTERNATIONAL, INC., *et al.*,<br><br>　　　　　　　Defendants. | Case No. 19-cv-0583-BAS-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DJAFAR-ZADE'S MOTION TO DISMISS:**<br>　1. **GRANTING DISMISSAL OF THE MISAPPROPRIATION OF TRADE SECRETS CLAIM;**<br>　2. **GRANTING DISMISSAL OF THE AIDING AND ABETTING CLAIMS;**<br>　3. **GRANTING DISMISSAL OF THE CONSPIRACY CLAIMS;**<br>　4. **DENYING DISMISSAL OF THE FRAUD CLAIM AND REQUEST FOR RESTITUTION; AND**<br>　5. **DENYING SPICE JAZZ LEAVE TO AMEND**<br><br>**(ECF No. 78)** |

This action arises from a dispute between two multi-level marketing ("MLM") companies selling culinary products. Spice Jazz LLC's former Chief Executive Officer allegedly conspired with Defendant Youngevity International, Inc. to steal Spice Jazz's employees and trade secrets. Spice Jazz also alleges that the CEO's daughter, Bianca Reyne Djafar-Zade, fraudulently received salary from Spice Jazz without providing services, contributed to Youngevity's alleged misappropriation of trade secrets, and aided and abetted the CEO's breach of fiduciary duty. Djafar-Zade moves to dismiss Spice Jazz's claims against her. The Court finds the motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Djafar-Zade's motion to dismiss.

## I.  BACKGROUND[1]

Plaintiff Spice Jazz and its joint venture partner, Your Inspiration at Home Ltd. ("YIAH") sold recipes and spice blends to customers using an MLM sales force composed of individual sales representatives. (Third Amended Complaint ("TAC"), ECF No. 71 ¶ 2.) Spice Jazz was organized as a limited liability company, and its parent company, JRjr33 ("JRJR") is its sole member and owner. (*Id.* ¶ 6.) JRJR is also the sole owner of YIAH. (*Id.*) Colleen Walters was Spice Jazz's CEO. (*Id.* ¶ 19.)

While Walters was still working at Spice Jazz as a CEO, Youngevity convinced Walters to move to Youngevity and bring with her Spice Jazz's successful sales representatives, key employees, and contractors. (TAC ¶¶ 3, 73, 75, 84.) Walters had access to an encrypted spreadsheet that stored the recipes for Spice Jazz's spice blends, to which only Spice Jazz's top employees had access. (*Id.* ¶¶ 35–37.) Walters allegedly took the spreadsheet with her to Youngevity, tinkered with the recipes, and sold them as

---

[1] All facts are taken from the Third Amended Complaint ("TAC"), which is the operative complaint. (ECF No. 71.) For the purposes of the Rule 12(b)(6) motions, the Court assumes that all facts alleged in the TAC are true. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Youngevity's products. (*Id.* ¶¶ 38, 82.) Walters also took Spice Jazz's customer data to Youngevity, which she gathered from Spice Jazz's sales directors. (*Id.* ¶ 58.)

Spice Jazz also alleges that, during Walters's tenure as its CEO, Djafar-Zade fraudulently received salary from Spice Jazz without providing services and aided and abetted Walters's misappropriation of trade secrets and breach of fiduciary duty. (*Id.* ¶¶ 85–99, 135, 158, 183.)

Spice Jazz sued Youngevity and Djafar-Zade on March 29, 2019. (ECF No. 1.) On May 12, 2020, Djafar-Zade filed her first motion to dismiss. (ECF No. 46.) In the Second Amended Complaint, which was the operative complaint at that time, Spice Jazz had brought five causes of action against Djafar-Zade based on fraud, breach of fiduciary duty, misappropriation of trade secrets, conspiracy to misappropriate trade secrets, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and restitution. (Second Am. Compl. ("SAC"), ECF No. 20.) The Court granted Djafar-Zade's motion to dismiss the SAC and dismissed with prejudice Spice Jazz's claim for breach of fiduciary duty. *Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-CV-583-BAS-WVG, 2020 WL 3406205, at *4 (S.D. Cal. June 19, 2020). The Court dismissed the remaining claims without prejudice. *Id.* at *2–5. The Court granted Spice Jazz leave to amend those claims. *Id.*

Spice Jazz filed a Third Amended Complaint. (Third Am. Compl. ("TAC"), ECF No. 71.) Against Djafar-Zade, Spice Jazz brings claims for: (1) fraud; (2) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), not involving any conspiracy; (3) misappropriation of trade secrets under the federal DTSA, based on conspiracy; (4) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), not involving any conspiracy; (5) misappropriation of trade secrets under CUTSA, based on conspiracy; (6) aiding and abetting breach of fiduciary duty, and (7) restitution. (TAC ¶¶ 85–99, 126–95.) As relief, Spice Jazz seeks actual damages and punitive or exemplary damages. (*Id.* at 35.)

Djafar-Zade moves to dismiss all claims against her, in part for failure to state a claim and in part for lack of subject matter jurisdiction. (ECF Nos. 78, 78-1.) Djafar-Zade's motion to dismiss is ripe for decision.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). On a facial challenge, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *Id.*; *Thornhill Publ'g Co. v. Gen. Tel. Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). A court generally decides the jurisdictional issue first before reaching issues on merits. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733–34 (9th Cir. 1979).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's factual allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. JURISDICTION

Djafar-Zade argues that the Court would lack original diversity of citizenship jurisdiction if the Court were to dismiss Spice Jazz's misappropriation of trade secrets claim, aiding and abetting claims, and conspiracy claims.

To invoke a court's diversity jurisdiction, the amount in controversy must exceed $75,000 and there must be complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a); *see also, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Complete diversity means the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *E.g.*, *Lewis*, 519 U.S. at 68.

The time for determining diversity jurisdiction is when the complaint is filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004). If the court has original jurisdiction over a matter, the court must generally exercise that jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (holding that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). "[A] district court may not dispose of some claims on the merits, then dismiss the suit for lack of jurisdiction because the remaining claims fall short of the minimum amount in controversy." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011). Djafar-

Zade asks the Court to do exactly that. She does not allege that this Court lacked original diversity of citizenship jurisdiction when the action was filed against her.

Therefore, the Court denies Djafar-Zade's request to dismiss the action for lack of subject matter jurisdiction.

## IV. SUFFICIENCY OF PLEADING

### A. Misappropriation of Trade Secrets Claims

The TAC alleges that Djafar-Zade misappropriated trade secrets or aided and abetted the misappropriation of the trade secrets by others. Although not expressly alleged in the TAC, the Court also analyzes conspiracy to misappropriate trade secrets, to the extent that Spice Jazz raises that claim against Djafar-Zade.

Djafar-Zade argues that Spice Jazz's amendment of the complaint did not cure the lack of sufficiency of allegations supporting its claims for misappropriation of trade secrets raised against her under the federal DTSA and California CUTSA. The federal DTSA and California CUTSA claims may be analyzed together "because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, No. 19-55862, 2020 WL 6072880, at *3 (9th Cir. Oct. 15, 2020). To state a claim for misappropriation of trade secrets, the plaintiff must allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Id.* The Court examines the allegations raised in the TAC to determine if it states enough facts to satisfy each element of a claim for misappropriation of trade secrets.

#### 1. First Element: Possession of Trade Secrets

Under the DTSA, "the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear*, 2020 WL 6072880, at *3 (citing 18 U.S.C. § 1839(3)). The owner of the information at issue must have "taken reasonable measures to keep such information secret." *See id.*, at *6 (citing 18 U.S.C. § 1839(3) and Cal. Civ. Code § 3426.1(d)). "Items in a trade secret description that 'any user or passer-by sees at

a glance' are 'readily ascertainable by proper means' and therefore 'hard to call trade secrets.'" *Id.* (citing *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)).

The plaintiff "must identify the trade secrets and carry the burden of showing they exist." *InteliClear*, 2020 WL 6072880, at *4 (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993))." A plaintiff need not "spell out the details of the trade secret." *Autodesk, Inc. v. ZWCAD Software Co., Ltd.*, No. 14-cv-1409, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). But "[t]he plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (emphasis in original) (citing *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)).

Spice Jazz identifies its trade secrets as

> (1) proprietary culinary recipes, (2) marketing methods, strategies and products, and (3) sales channels (i.e. the identity of customers willing to buy Plaintiff's products), that were utilized by a sales force of several thousands of salespeople (and growing) to successfully market Plaintiff's proprietary products to customers internationally.

(TAC ¶¶ 17, 33.)  Spice Jazz offers enough facts to plausibly state all three categories of trade secrets.  Spice Jazz provides detailed examples of the recipes that Youngevity allegedly misappropriated. (*Id.* ¶¶ 40–44.)  Spice Jazz specifies that it kept those recipes hidden from both the general public and its competitors—saved in an encrypted spreadsheet, stored on password-protected computers, inside a locked office. (*Id.* ¶¶ 36–38.)

"[M]arketing-related information, such as marketing plans and marketing analysis may constitute a trade secret." *Yeiser Research & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-RBB, 2018 WL 3993370, at *5 (S.D. Cal. Aug. 21, 2018) (collecting cases). Spice Jazz alleges that it developed for its sales representatives the misappropriated marketing materials, which include: sales pitches,  sales techniques, "specific training for

sponsoring, host coaching, selling products, trade shows and markets, and fundraising," and "proprietary marketing materials such as brochures, catalogues and PowerPoints." (TAC ¶¶ 50–52.) Spice Jazz stored those marketing materials "on password-protected computers kept in a locked office, [and the materials] were shared through a secure Dropbox account." (*Id.* ¶ 53.)

The TAC also plausibly states that Spice Jazz's sales channel information constitutes trade secrets. Courts have regarded customer information that requires time and effort to gather as protected trade secrets, unlike customer information that anyone can easily access. *See, e.g.*, *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1088–89 (E.D. Cal. 2012) (finding that comprehensive compilation of customer, operator, and vendor information constituted protected trade secrets). Spice Jazz's TAC specifies that the consumer names and contact information at issue are a list of customers who already had business with Spice Jazz and are likely to repurchase similar products from Spice Jazz or its competitors. (TAC ¶ 55–56.) The TAC also specifies that the information at issue required time and effort to gather and were not readily available to the general public— Walters allegedly compiled the information by "instruct[ing] her sales directors to store the names and contact information of the sales representatives under them, and of all their individual customers." (*Id.* ¶ 58.)

Spice Jazz has plausibly stated that Spice Jazz possessed trade secrets.

### 2. Second Element: Misappropriation

The DTSA's definition of "misappropriation" includes (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or (2) "disclosure or use of a trade secret of another without express or implied consent" by a person who "used improper means to acquire knowledge of the trade secret" or otherwise meets the criteria set forth in the statute. 18 U.S.C. § 1839(5). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or

other means" but not "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

The Court previously dismissed the misappropriation claims against Djafar-Zade without prejudice, finding that the SAC did not include specific allegations that Djafar-Zade used or had access to any trade secrets. *Spice Jazz LLC*, 2020 WL 3406205, at *4 ("Spice Jazz makes no misappropriation allegations specifically against [Djafar-Zade], but instead brings claims against Defendants generally."). By amending the complaint, Spice Jazz now alleges that "[u]pon information and belief," Djafar-Zade misappropriated Spice Jazz's trade secrets by (1) joining Youngevity as a distributor and using her "downline" to help the transfer of the sales representatives from Spice Jazz to Youngevity, who brought with them the identified trade secrets; (2) instructing, or assisting, Spice Jazz's employees and distributors to compile and transfer the identified trade secrets; (3) electronically receiving or transmitting the database of Plaintiff's spice blends that Youngevity later used as a model for its products; and (4) electronically receiving or transmitting the downloaded contact information of customers known to be willing buyers of Plaintiff's products. (TAC ¶¶ 135, 144, 158, 167.)

Conclusory allegations raised "on information and belief," not accompanied by any specific factual allegations regarding the defendant's involvement in the actions giving rise to the lawsuit, are insufficient to state a claim against the defendant. *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926 (9th Cir. 2013); *see also Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1111 (S.D. Cal. 2016) (holding that where the core allegation of an illegal act is conclusory, the allegations on information and belief that reiterate that core allegation do not make that act plausible).

In *Blantz*, the Ninth Circuit Court of Appeals discounted the plaintiff's allegation raised "on information and belief" that the defendant directed the other defendants to take the actions that form the basis of the complaint because "no factual assertions support[ed] this allegation, and the conclusory allegations [were] insufficient on their own to defeat a

motion to dismiss." *Blantz*, 727 F.3d at 927. Much like the discounted allegation in *Blantz*, Spice Jazz's allegation raised on information and belief—that Djafar-Zade instructed others to compile and transfer the identified trade secrets—is not supported by factual assertions. The same applies to Spice Jazz's allegation that Djafar-Zade electronically received or transmitted trade secrets. Even if the Court were to accept that allegation as true, the Court would have to rely on speculations—for example, that Djafar-Zade committed espionage or employed other improper means to acquire, disclose, or use the trade secrets, which are not alleged in the TAC—to infer that Djafar-Zade's receipt or transmission of the trade secrets constitute illegal misappropriation.

Finally, the allegation that Djafar-Zade joined Youngevity and used her "downline," or her sales account, to transfer the sales representatives from Spice Jazz to Youngevity does not suggest that Djafar-Zade herself acquired the trade secrets that those sales representatives allegedly gave to Youngevity. Spice Jazz does not dispute that the sales representatives are not trade secrets. (TAC ¶ 184.)

The Court dismisses any claim that Djafar-Zade herself misappropriated Spice Jazz's trade secrets.

### B.     Aiding and Abetting Claims

Djafar-Zade argues that Spice Jazz's claims for aiding and abetting misappropriation of trade secrets and breach of fiduciary duty should be dismissed as preempted by the California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code § 3426 *et seq.*, or for failure to state a claim.

A claim for aiding and abetting may be supported by allegations that (1) the defendant gave substantial assistance or encouragement to the other, knowing that the other's conduct constitutes a breach of duty; or (2) the defendant gave "substantial assistance to the other in accomplishing a tortious result and [the defendant's] own conduct, separately considered, constitutes a breach of duty to the third person." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996)). Here, Spice Jazz relies on the same

allegations for both of its aiding and abetting claims—all raised "upon information and belief"—that Djafar-Zade (1) joined Youngevity as a distributor and used her "downline" to help the transfer of the sales representatives from Spice Jazz to Youngevity, who brought with them Spice Jazz's trade secrets; (2) instructed, or assisted, Spice Jazz's employees and distributors to compile and transfer the identified trade secrets; (3) electronically received or transmitted the database of Spice Jazz's spice blends that Youngevity later used as a model for its products; and (4) electronically received or transmitted the downloaded contact information of customers known to be willing buyers of Plaintiff's products. (TAC ¶¶ 135, 144, 158, 167, 183.)

### 1.     Aiding and Abetting Misappropriation of Trade Secrets

The TAC does not state a plausible claim that Djafar-Zade aided and abetted other Defendants' misappropriation of trade secrets. As an initial matter, the TAC contains no fact that would support the inference that Djafar-Zade's own conduct constituted a misappropriation of trade secrets. *See supra* Part IV.A.

Thus, the only theory through which Spice Jazz may state a cause of action for aiding and abetting is that Djafar-Zade gave substantial assistance or encouragement to the others, knowing that the others' conduct constituted a breach of their duties to Spice Jazz. *See Neilson*, 290 F. Supp. 2d at 1118 (holding that a claim for aiding and abetting may be stated either by alleging (1) the defendant's own commission of a tort and substantial assistance of the other's commission of the tort or (2) the defendant's substantial assistance of the other's commission of the tort, knowing that the other's conduct constitutes a tort). Spice Jazz does not allege that Djafar-Zade knew that the sales representatives who were hired as her downline misappropriated trade secrets. But even assuming without deciding that Djafar-Zade knew that the downline employees engaged in misappropriation of trade secrets, "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Fiol*, 50 Cal. App. 4th at 1326 (1996) (finding that the supervisory employee cannot be held liable as an aider and abettor for failing to prevent the wrongdoing of a subordinate). Rather, the "plaintiff must show that the aider and

abettor provided assistance that was a substantial factor in causing the harm suffered." *Neilson*, 290 F. Supp. 2d at 1135. Spice Jazz does not allege those facts. Even reading the TAC in the light most favorable to Spice Jazz, the Court cannot draw the inference that Djafar-Zade's connection to the scheme was more than tangential. To the extent that former Spice Jazz employees who took its trade secrets were placed under Djafar-Zade's line of organization, that fact alone, without more details, does not even provide a but-for causation for the alleged harm, much less a proximate causation, which some courts have required to find that the assistance was substantial. *See, e.g.*, *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D. N.Y. 2001) ("Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated"); *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1052–53 (1991) (endorsing a "substantial factor" test for proximate cause). In other words, Spice Jazz would have sustained the same harm even if the former Spice Jazz employees were placed under another Youngevity employee's downline. Other allegations raised against Djafar-Zade that pertain to the alleged misappropriation of trade secrets rely exclusively on information and belief and are mostly conclusory. *See supra* Part IV.A.2.

The TAC does not state a plausible claim that Djafar-Zade aided and abetted others' misappropriation of trade secrets. Therefore, the Court dismisses Spice Jazz's claim against Djafar-Zade for aiding and abetting misappropriation of trade secrets.

### 2. Aiding and Abetting Breach of Fiduciary Duty

Djafar-Zade also seeks to dismiss Spice Jazz's claim for aiding and abetting breach of fiduciary duty. Because the TAC does not allege that Djafar-Zade's own conduct constitutes any breach of fiduciary duty, the only available theory through which Spice Jazz may state a cause of action for aiding and abetting breach of fiduciary duty is that Djafar-Zade gave substantial assistance or encouragement to Walters, knowing that Walters's conduct constituted a breach of fiduciary duty. *Neilson*, 290 F. Supp. 2d at 1118 (holding that a claim for aiding and abetting may be stated either by alleging (1) the defendant's own commission of a tort and substantial assistance of the other's commission

of the tort or (2) the defendant's substantial assistance of the other's commission of the tort, knowing that the other's conduct constitutes a tort). As stated above, the TAC does not contain enough facts to satisfy the requirement that the alleged assistance or encouragement be substantial. *See supra* Part IV.B.1. The TAC does not state a plausible claim that Djafar-Zade aided and abetted Walters's breach of fiduciary duty.

Therefore, the Court dismisses Spice Jazz's claim against Djafar-Zade for aiding and abetting breach of fiduciary duty.[2]

### C. Conspiracy Claims

To the extent that Spice Jazz raises a civil conspiracy claim against Djafar-Zade in connection with the alleged misappropriation of trade secrets or breach of fiduciary duty, the TAC does not state a plausible claim for those causes of action. "Under California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Grp., Inc. v. Genesis Creative Grp.*, Inc., 122 F.3d 1211, 1228 (9th Cir. 1997). It is instead "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. C 06 7541 PJH, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11 (1994)).

To state a claim for civil conspiracy under California law, a complaint must allege (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct. *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996). "Each member of the alleged conspiracy must be legally capable of committing the underlying tort . . . and must intend the success of the purpose of the conspiracy." *Mintel Learning Tech.*, 2007 WL 2288329, at *4. "In addition, all elements of the underlying tort must be satisfied." *Id.*

//

---

[2] The Court does not reach whether the CUTSA preempts the aiding and abetting claims because the outcome would not change either way.

### 1. Conspiracy to Misappropriate Trade Secrets

Assuming without deciding that the TAC pleads the underlying claim of misappropriation of trade secrets against other defendants, the TAC does not raise facts that allow the Court to draw the reasonable inference that that Djafar-Zade intended the success of the purpose of the alleged conspiracy. Any such allegations that are mentioned are generalized or conclusory allegations raised on information and belief, which the Court may not accept. *See Spice Jazz LLC*, 2020 WL 3406205, at *4; *supra* Part IV.A.2. The TAC does not plausibly state a claim against Djafar-Zade for conspiracy to misappropriate trade secrets.

### 2. Conspiracy to Breach Fiduciary Duty

To state a claim for conspiracy to breach a fiduciary duty against Djafar-Zade, Spice Jazz must allege that Djafar-Zade herself owed a duty to Spice Jazz. *Neilson*, 290 F. Supp. 2d at 1133 ("California courts have also held that a claim for civil conspiracy does not arise unless the alleged conspirator owed the victim a duty not to commit the underlying tort.") (citing California Supreme Court cases). Spice Jazz has not alleged that Djafar-Zade owed it a fiduciary duty. The TAC does not state a plausible claim that Djafar-Zade engaged in an actionable civil conspiracy to breach fiduciary duty.

Therefore, the Court dismisses the claims against Djafar-Zade for conspiracy to misappropriate trade secrets and for conspiracy to breach fiduciary duty.[3]

### D. Fraud and restitution

Djafar-Zade seeks to dismiss the fraud and restitution claim as time-barred and for lack of factual sufficiency. "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, a court may construe an "unjust enrichment" claim as "an attempt to plead a cause of action giving rise to a right to restitution . . . in lieu of contract damages," such as "when an express contract was procured

---

[3] The Court does not reach whether the CUTSA preempts the conspiracy claims because the outcome would not change either way.

- 14 -

by fraud, is unenforceable, or is ineffective" or when a "plaintiff chooses to seek restitution on a quasi-contract theory instead of suing in tort." *GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08–01784 SI, 2008 WL 4848036, at *7 (N.D. Cal. Nov. 7, 2008) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 385 (2004)); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (listing the bases for a cause of action seeking restitution).

The Court previously dismissed Spice Jazz's request for restitution, finding that Spice Jazz did not allege "any contractual relationship with Djafar-Zade that was procured by fraud or is otherwise unenforceable." *Spice Jazz LLC*, 2020 WL 3406205, at *5. After amending its pleading, Spice Jazz now alleges that Djafar-Zade fraudulently induced Spice Jazz to hire her "by representing that she would perform valuable work for Plaintiff, when in reality, she never intended to do so, and her plan was to collect hourly payments for no work by relying on the protection of her mother who was CEO of the company." (TAC ¶ 90.)

The Court construes Spice Jazz's claim for restitution as that for fraudulent inducement of contract. Therefore, the analyses of the claim for fraud and the claim for restitution merge.

### 1. Statute of Limitations

As an initial matter, Djafar-Zade requests the Court to take judicial notice of a declaration that Spice Jazz filed earlier in the litigation. (Declaration of Kylie Burnett ("Burnett Decl."), ECF No. 29-4, filed Feb. 11, 2020.) Djafar-Zade argues that the Declaration establishes that Spice Jazz knew about the alleged fraud in July 2015, and her claims for fraud and restitution are time-barred.

The Court grants Djafar-Zade's request for judicial notice. At the Rule 12 motion to dismiss stage, the court may not consider extrinsic matters outside the pleadings without converting the motion to that for summary judgment. Fed. R. Civ. P. 12(b)(6); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). As an exception, the court can take judicial notice of "matters of public record." *Id.*; Fed. R. Evid. 201(b). "Facts properly

held the object of judicial notice in the context of a motion to dismiss under 12(b)(6) include . . . items in the record of the case." *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1261 (N.D. Cal. 1991). Because Kylie Burnett's Declaration is a part of the record of this case, the Court takes judicial notice of the Declaration.

The issue is whether the Declaration supports Djafar-Zade's theory that the fraud claims are time-barred. It does not. At the pleading stage of a litigation, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (alteration in original) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Under California law, a three-year statute of limitations applies to claims for fraud. Cal. Civ. Proc. Code § 338(d). Generally, the cause of action accrues at the time when "the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). For a fraud cause of action to accrue, discovery of the facts constituting the fraud is also required. Cal. Civ. Proc. Code § 338(d). The elements for fraud under California law are: "(1) misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Bank of the W. v. Valley Nat. Bank of Arizona*, 41 F.3d 471, 477 (9th Cir. 1994) (citing *Hackethal v. National Casualty Co.*, 189 Cal. App. 3d 1102, 1111 (1987)).

The issue is whether Djafar-Zade has shown that Spice Jazz cannot have learned of the facts constituting the fraud—misrepresentation, scienter, intent, reliance, and damage—on or after March 29, 2016, three years before Spice Jazz filed this suit. Djafar-Zade bases her argument solely on the Burnett Declaration. According to the Declaration,

Burnett was the Chief Operating Officer of YIAH from November 2012 through May 2016. (Burnett Decl. ¶ 1.) On June 11, 2015, YIAH hired Djafar-Zade as an assistant for $22.98 Australian Dollars per hour, and she remained in that position throughout Burnett's tenure as YIAH's COO. (*Id.* ¶¶ 4, 8.) Between July 15, 2015, and July 22, 2015, Djafar-Zade made major errors in her work product. (*Id.* ¶ 11.) When Burnett confronted Djafar-Zade about it, Djafar-Zade responded that she reports to her mother, Walters, and Burnett had no control over her. (*Id.*) Burnett also became aware that Djafar-Zade was not performing her duties through other avenues: through Djafar-Zade's immediate supervisor and through confirming YIAH's bank accounts for payments made to Djafar-Zade. (*Id.* ¶¶ 11, 15–16.)

The Declaration does not show that Spice Jazz's cause of action for fraud accrued in July 2015. Burnett's statements about the errors that Djafar-Zade made in July 2015 do not satisfy any of the elements of fraud. The mere fact that an employee made errors—however grave—does not lend itself to the conclusion that the employee made misrepresentations to her employer with the intent to defraud. Aside from the statements about the July 2015 incident, the Declaration does not state when Burnett discovered the facts constituting the alleged fraud. It is possible that Burnett discovered those facts just before she left her position as YIAH's COO in May of 2016. Under that scenario, Spice Jazz's cause of action would have accrued within the limitations period.

In sum, the Declaration does not contain enough evidence for the Court to find that Spice Jazz's cause of action for fraud cannot have accrued within the three-year limitations period. Djafar-Zade does not offer any other evidence. Therefore, the Court declines to dismiss Spice Jazz's fraud claims as time-barred.[4]

### 2. Sufficiency of Factual Allegations

Djafar-Zade also seeks to dismiss the fraud claim for lack of sufficiency of factual allegations. When a claim is based on fraud, the circumstances surrounding the fraud must

---

[4] The Court need not reach Spice Jazz's argument that Burnett's knowledge may not be imputed to Spice Jazz because the results would be the same.

be alleged with particularity. Fed. R. Civ. P. 9(b); *see Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (holding that the district court may dismiss a claim grounded in fraud if the allegations do not satisfy Rule 9(b)). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). A plaintiff must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud, together with the content of any alleged misrepresentation and explain why it is false or misleading. *See id.* at 1107. The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted)). "However, the rule may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

The Court has already found in its previous Order that Spice Jazz's allegations that Djafar-Zade claimed payment for hours that she did not actually work gave Djafar-Zade enough notice of its claim for fraud. *Spice Jazz LLC*, 2020 WL 3406205, at *2. To the extent that the TAC lacks certain details of the alleged fraud, such as whether Djafar-Zade performed the duties that she was hired for, those facts are within Djafar-Zade's knowledge. The TAC satisfies Rule 9(b) as to the claims for fraud.

Therefore, the Court denies Djafar-Zade's motion to dismiss Spice Jazz's claim for fraud and the related request for restitution.

## V. LEAVE TO AMEND

Because Spice Jazz has already been provided opportunities to amend its claims to no avail, the Court finds granting further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007

(9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

## VI. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for misappropriation of trade secrets.

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for aiding and abetting misappropriation of trade secrets.

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for aiding and abetting breach of fiduciary duty.

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for civil conspiracy of misappropriating trade secrets.

The Court **GRANTS** Defendants' motion to dismiss Plaintiff's claim for civil conspiracy of breach of fiduciary duty.

The Court **DENIES** Defendants' motion to dismiss Plaintiff's claim for fraud and request for restitution.

The Court **DENIES** Plaintiff another leave to amend its Complaint.

**IT IS SO ORDERED.**

**DATED: November 2, 2020**

Hon. Cynthia Bashant
United States District Judge