UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPICE JAZZ LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>YOUNGEVITY INTERNATIONAL, INC., et al.,<br><br>　　　　　　　Defendants. | Case No. 19-cv-0583-BAS-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF No. 98)** |

Plaintiff brings this Motion to Amend Complaint to substitute three named Defendants for the originally listed Doe Defendants. (ECF No. 98.) Defendant opposes (ECF No. 101), and Plaintiff replies. (ECF No. 102.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Plaintiff's Motion.

**I.　BACKGROUND**

　　**A.　Third Amended Complaint ("TAC") (ECF No. 71)**

According to the TAC, Plaintiff sold culinary recipes and spices to customers using a multi-level marketing ("MLM") sales force composed of individual sales representatives. (TAC ¶ 2.) Sales force members were recruited, provided with marketing materials and

strategies, entrusted with secret recipes, and encouraged to sell the products throughout Australia and the United States. (*Id.*) Plaintiff hired Colleen Walters to be its CEO, and Walters successfully recruited sales team members and ran the company's operation. (*Id.* ¶¶ 19, 24.) But during her employment with Plaintiff, Walters worked with Defendant Youngevity, another business running an MLM sales force. (*Id.* ¶¶ 21, 27.) Walters "hatched a scheme" to steal Plaintiff's business and bring it to Youngevity, who offered her "a sweeter deal for her spices." (*Id.* ¶¶ 27, 28.) Walters then left Plaintiff's company, taking with her all of Plaintiff's sales force and "a treasure trove of proprietary recipes and products." (*Id.* ¶ 31.)

In the TAC, without naming specific names, Plaintiff made allegations against Doe Defendants, who it alleged are "unknown Youngevity officers and directors." (TAC ¶ 72.) Notably, Plaintiff alleged that Walters "and individuals at Youngevity, including unknown officers and directors, discussed and agreed to a plan through which Ms. Walters would orchestrate the theft of Plaintiff's entire business by moving all of Plaintiff's key sales people and employees and all of Plaintiff's trade secrets from Plaintiff to Youngevity, its direct competitor." (*Id.* ¶¶ 71, 72, 84.)

**B.     Proposed Fourth Amended Complaint ("4AC") (ECF No. 98-3)**

In the proposed 4AC, Plaintiff seeks to substitute Youngevity's CEO, Stephan R. Wallach; Youngevity's President and CFO, David S. Briskie; and Youngevity's former Chief Marketing Officer, Loren J. Castronovo, for these "unknown Youngevity officers and directors." Plaintiff further seeks to add allegations that Walters "communicated with and conspired with [these three] Officers and Directors before organizing the mass defection of Plaintiff's key employees and distributors to Youngevity as well as the mass theft of Plaintiff's trade secrets." (4AC ¶ 89.) Alternatively, Plaintiff claims these three individuals acquired Plaintiff's trade secrets "in circumstances in which they had reason to know and reasonably should have known . . . were being acquired by improper means." (*Id.* ¶ 90.)

Plaintiff adds these three new defendants to six causes of action: Counts Two, Four, Five, Six, Seven, and Eight. In Count Two, Plaintiff alleges that the three individuals tortiously interfered with its prospective business advantage by "actively conspir[ing] with Ms. Walters to interfere with [Plaintiff's] contracts [with its sales force], convincing her to use her position as Plaintiff's CEO to convince the sales force members to terminate their contractual relationships with Plaintiff and move with her to Youngevity." (4AC ¶¶ 112, 114). In Counts Four through Eight, Plaintiff alleges that the three defendants either had reason to know that the stolen trade secrets were acquired via improper means or they conspired to misappropriate these trade secrets.

The facts supporting the claims against these three new defendants are based on interrogatory responses received from Youngevity ten days before the amended complaint was filed. (ECF No. 98-4.) Specifically, Youngevity indicated that Wallach, Briskie, and Castronovo all contacted Walters before she became a Youngevity distributor: Wallach and Briskie in late March/early April 2017 and Castronovo in early April 2017. (*Id.* at 3–4.) At the same time, these three individuals were involved in the creation of Youngevity's "Saveur" line of spice products. (*Id.* at 6–7.) Plaintiff alleges that this "Saveur" line of spice products was launched by Youngevity "immediately or shortly after" Walters moved to Youngevity and was based on the spice products stolen from Plaintiff. (4AC ¶ 89b.)

## II.   ANALYSIS

### A.   Standard

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party and futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Defendants do not claim that Plaintiff's motion to amend is made in bad faith, that they will be unduly prejudiced by the amendment, or that there has been

undue delay in seeking the amendment.  In fact, Plaintiff alleges without contradiction that it moved to amend the complaint ten days after learning the names of the officers and directors, before the scheduling cut-off date and early in the discovery process. (ECF No. 98.)

Instead, Defendants argue that the amendment would be futile because the proposed 4AC does not comport with Rule 8, and the proposed 4AC does not distinguish among the three newly named defendants.  Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). "Rule 8 does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

To state a cause of action for misappropriation of trade secrets, plaintiff must plead, first, that there was a trade secret, and, second, that defendant misappropriated that secret. *Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003).  The elements of the tort of intentional interference with prospective economic advantage are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Korean Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

"A corporate director or officer's status 'neither immunizes [such] person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts.'"  *Terarecon*, 260 F. Supp. 2d at 947 (citing *Francis T. v. Village Green Owners*

*Ass'n*, 42 Cal. 3d 490, 505 (1986)). "[A] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Id.* at 950 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins., Co.*, 173 F.3d 725, 734 (9th Cir. 1999)). "But mere knowledge of tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation absent other 'unreasonable participation' in the unlawful conduct by the individual." *Id.*

Under California law, civil conspiracy is a "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Terarecon*, 260 F. Supp. 2d at 947 (quoting *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 510–11 (1994)). To successfully plead a cause of action under a civil conspiracy theory, a plaintiff must allege specific action on the part of each defendant. *See id.* at 948 (holding that "plaintiff cannot indiscriminately allege that conspiracies existed between and among all defendants").

### B.     Application

Although the 4AC may not be a model of clarity, it is clear what Plaintiff is alleging. Plaintiff claims that each of the newly named Defendants contacted Ms. Walter before she left Spice Jazz and moved to Youngevity. Additionally, Plaintiff alleges that the three defendants used these early conversations to obtain information so that they could, "immediately or shortly after" Ms. Walter's moved to Youngevity, launch a new line of "Saveur" line of spices based on the spice formulas stolen from Plaintiff. Assuming all of these allegations are true, as the Court must do at this stage of the proceedings, the 4AC sufficiently states a claim against each defendant for misappropriation of trade secrets. It is true that "undifferentiated pleading against multiple defendants is improper." *Daimler AG v. A-Z Wheels, LLC,* No. 16-cv-875-JLS (MDD), 2017 WL 9854427 (S.D. Cal. Nov. 27, 2017) (quoting *Aaron v. Aguirre,* No. 06-cv-1451, 2007 WL 959083, at *16 n.6 (S.D.

Cal. Mar. 8, 2007)).  However, in this case, Plaintiff's allegations in the 4AC—that each of the three defendants spoke with Walter before she moved to Youngevity and used those conversations to develop a line of spices based on the stolen spice formulas—are sufficient to satisfy Rule 8.

Additionally, Plaintiff alleges that these three defendants, in their conversations with Walters before she left Youngevity, "convince[d] [Walters] to use her position as Plaintiff's CEO to convince the sales force members to terminate their contractual relationships with Plaintiff and move with her to Youngevity." (4AC ¶¶ 112, 114.)  Thus, Plaintiff adequately alleges that each defendant, in his or her conversation with Walters, intentionally disrupted Plaintiff's relationship with its sales force.  Because Plaintiff alleges that each Defendant had a conversation with Walters before she left Spice Jazz, the allegations are sufficient to allege tortious interference with Plaintiff's sales force contracts.

### III.  CONCLUSION

For the above-stated reasons, Plaintiff's Motion to Amend Pleadings is **GRANTED**.  (ECF No. 98.)  Plaintiff is **ORDERED** to file the Fourth Amended Complaint (ECF No. 98-4) on the docket and request a new summons **on or before February 18, 2021**.

**IT IS SO ORDERED.**

**DATED: February 11, 2021**

Hon. Cynthia Bashant
United States District Judge